**TOWNSHIP OF LOWER MERION,**
Petitioner,

v.

**WORKERS' COMPENSATION
APPEAL BOARD (TANSEY),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 3, 2001.

Decided Sept. 11, 2001.

Nancy M. Farese, Blue Bell, for petitioner.

Joseph W. Chupein, Jr., Media, for respondent.

Before SMITH, Judge, KELLEY, Judge, and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

The Township of Lower Merion (Employer) petitions for review of the November 9, 2000 order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of the Workers' Compensation Judge (WCJ) to grant Michael Tansey's (Claimant's) review petition and to dismiss his penalty petition as moot.[1] The sole issue is whether the Board erred in determining that any portion of a municipal police pension attributable to contributions from the Commonwealth of Pennsylvania should not be considered "funded by the employer" for purposes of calculating a pension offset against workers' compensation benefits under Section 204(a) of the Workers' Compensation Act (Act).[2] Because we agree that the funds provided by the Commonwealth should not be included in the calculation for the pension offset, we affirm.

Claimant was a police officer for Lower Merion Township. On September 30, 1996, Claimant filed a claim petition alleging that he sustained a work-related injury in the nature of a stroke on July 3, 1996. When Employer subsequently accepted the claim in a December 18, 1996 Notice of Compensation Payable, Claimant received total disability benefits at $527.00 per week, retroactive to the date of injury.[3]

---

**1.** Only the review petition is at issue in the present case.

**2.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 71(a).

**3.** On September 22, 1997, the WCJ issued an

In September of 1997, Claimant began receiving a pension from the Township of Lower Merion Police Pension Fund. On October 3, 1997, Employer filed a Notice of Workers' Compensation Benefit Offset, notifying Claimant that his workers' compensation benefits would be offset by his police pension. In calculating the offset, Employer treated all contributions to the police pension fund that were not made by Claimant as funds contributed by Employer. This included any contributions to the fund made by third parties such as the Commonwealth.

Subsequently, Claimant filed a review petition seeking a review of the pension offset. After finding that the calculation for the pension offset should include only funds contributed by Employer and not funds provided by the Commonwealth, the WCJ granted the review petition. The Board affirmed and Employer's petition for review to this Court followed.[4]

Employer established its police pension fund pursuant to Section 1 of the "Police Pension Fund Act" (Act 600),[5] which also dictates the sources of funding for a municipal police pension. In pertinent part, Section 1 provides as follows:

> (a) Each borough, town and township of this Commonwealth maintaining a police force of three or more full-time members and each regional police department shall, and all other boroughs, towns or townships may, establish, by ordinance or resolution, a police pension fund or pension annuity *to be main-tained by a charge against each member of the police force, by annual appropriations made by the borough, town, township or regional police department, by payments made by the State Treasurer to the municipal treasurer from the moneys received from taxes paid upon premiums by foreign casualty insurance companies for purposes of pension retirement for policemen, and by gifts, grants, devises or bequests granted to the pension fund* pursuant to section two of this act. (Emphasis added.)

The specific workers' compensation statute at issue is Section 204(a) of the Act,[6] which, in pertinent part, provides the following with regard to credits to employers for pension benefits paid:

> The severance benefits paid by the employer directly liable for the payment of compensation and the benefits *from a pension plan to the extent funded by the employer directly liable for the payment of compensation* which are received by an employe shall also be credited against the amount of the award made under sections 108 and 306, except for benefits payable under section 306(c). (Emphasis added.)

Employer argues that the Board erred in concluding that the monies Employer received from the Commonwealth should not be considered in determining the proper amount of the offset to be taken. It avers that Section 204(a) cannot be read independently of the public policy consid-

---

order dismissing the claim petition as moot and ordering that Claimant's counsel be awarded a fee of twenty percent of all compensation paid to Claimant. On appeal, the Board remanded the case to the WCJ for the limited purpose of clarifying payment of counsel fees.

4. Because this appeal presents a question of law, this Court's review is plenary. *Kmart*

*Corp. v. Workers' Compensation Appeal Board (Fitzsimmons)*, 561 Pa. 111, 748 A.2d 660 (2000).

5. Act of May 29, 1956, P.L. (1955) 1804, *as amended*, 53 P.S. § 767.

6. 77 P.S. § 71(a).

erations that lead to the enactment of what is commonly called Act 57.[7]

Employer emphasizes that the general purpose of the Act 57 amendments was to curtail the costs associated with work-related injuries. It avers that the General Assembly sought to prevent a claimant from being unjustly enriched by receiving monies from several sources for the same loss of earnings from the same injury.

Further, Employer contends that Section 204(a) cannot be read independently of the rules and regulations promulgated with respect to the pension benefit offset. It maintains that the purpose of Section 204(a) allowing a credit for monies contributed by the employer responsible for the payment of benefits was to prohibit taking into consideration monies contributed by other employers in a situation where there is funding of a pension by different employers.[8] It was not to prohibit an offset for monies contributed by the Commonwealth to a municipal police pension fund.

Additionally, Employer maintains that the concept of allowing an offset to be taken by an employer against pension benefits received by a claimant is not unique to the Act 57 amendments. It alleges that in limited circumstances, this Court in prior case law recognized the right of a carrier to maintain an offset against several forms of pension benefits. *Murhon v. Workmen's Compensation Appeal Board (Kawecki Berylco, Inc.)*, 152 Pa.Cmwlth. 229, 618 A.2d 1178 (1992) (employer entitled to credit where disability pension plan under which claimant was paid was noncontributory and where payment would not deplete benefit to which claimant would be entitled); *Peoples Natural Gas Co. v. Workmen's Compensation Appeal Board (Keith)*, 65 Pa.Cmwlth.119, 441 A.2d 1364 (1987) (employer entitled to credit where payments made were in relief of claimant's incapacity to work, sickness and accident benefits, rather than as wages for work performed); *Jones v. Workmen's Compensation Appeal Board (U.S. Steel Corp.)*, 65 Pa.Cmwlth.208, 442 A.2d 37 (1982) (employer entitled to credit on future installments of compensation for payments that were already made to claimant under a sickness and accident self-insurance plan).

Employer notes that the focus of the law prior to Act 57 was on both the type of pension benefits and the manner in which the fund was created. It acknowledges that Act 57 removed the distinction between the type of pension benefits received by a claimant. Employer contends, however, that the General Assembly in enacting Act 57 simply incorporated the prior case law permitting pension benefits to be offset as long as employee contributions were not considered in the calculations.

Claimant rejects Employer's argument that the pension offset provision of Act 57(1) merely codified prior case law whereby disability pension benefits and sickness and accident benefits were permitted to be offset, as long as employee contributions were not included; and (2) removed the distinction between disability pensions and other types of pensions. Claimant points out that pre-Act 57 case law gave the employer (1) a credit for payments made by the employer who, while denying liability for workers' compensation benefits,

---

7. Act of June 24, 1996, P.L. 350.

8. The applicable regulation is 34 Pa.Code § 123.10(a), the multi-employer pension fund offset regulation, which provides that "[w]hen the pension benefit is payable from a multi-employer pension plan, only that amount which is contributed by the employer directly liable for the payment of workers' compensation shall be used in calculating the offset to workers' compensation benefits."

made payments in regularly stated amounts to a disabled employee; and (2) a credit for sickness and accident benefits voluntarily paid by the employer in relief of the employee's inability to work. Thus, Claimant maintains that pre-Act 57 case law stands merely for the proposition that credit was allowed under certain circumstances for payments made by the employer. It does not signify the proposition that an employer could ever get credit for benefits funded by a third party.

This Court similarly rejects Employer's attempt to use pre-Act 57 case law in support of its argument. Those cases are simply inapposite to the situation at bar.

Employer additionally argues because the Act fails to list the sources of funds an employer directly responsible for the payment of compensation may use to fund a pension plan, Section 204(a) was not meant to prohibit an offset by an employer who receives funds from several sources. It contends that, had the General Assembly meant to exclude those monies received by an employer from different sources, it would have incorporated that language into the Act.

Claimant maintains that Employer is not entitled to an offset for the Commonwealth-funded portion of the pension because the Commonwealth is not the employer directly liable for the payment of compensation under the plain language of Section 204(a) of the Act. To reiterate, that section provides that "the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award made . . . ."

Claimant points out that Section 1 of Act 600 mandates four pension-fund sources: (1) employee contributions; (2) municipal appropriations; (3) payments from the State Treasury from foreign casualty insurance premiums; and (4) gifts, grants, devises and bequests. He contends that only benefits funded by the second category, municipal appropriations, constitute benefits "to the extent funded by the employer directly liable for payment of compensation" under Section 204(a).

Specifically, Claimant maintains that the other three categories, by definition, are simply not employer-funded, which the General Assembly clearly required in Section 204(a). Thus, he alleges that Employer erred in using all the non-employee-funded portions of the pension to calculate the offset.

Claimant points out that the courts have never allowed a credit for payments not funded by the employer and that there are no cases that give an employer credit for benefits funded by a third party. Thus, he argues that, to the extent that a third party, the Commonwealth, provided funds to the pension plan, those funds were not contributed by the employer responsible for workers' compensation as clearly mandated by Section 204(a) of the Act.

This Court agrees with Claimant that the Board did not err in determining that third-party contributions to the pension fund. i.e., those made by an entity other than the employer directly liable for the payment of compensation, should not be used for purposes of calculating a pension offset against workers' compensation benefits. We agree with Claimant that any other interpretation flies in the face of the clear language of Section 204(a) of the Act. See Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b) ("[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.")

Employer additionally argues that its discretion to allocate Commonwealth contributions into one of several pension plans

somehow makes that third-party contribution one funded by Employer. *See Pennsylvania State Lodge of the Fraternal Order of Police by Bascelli v. Hafer,* 525 Pa. 265, 579 A.2d 1295 (1990) (once a municipality receives funds pursuant to Section 402 of the Municipal Pension Plan Funding Standard and Recovery Act (Act 205),[9] it is within the municipality's discretion to allocate the monies as it sees fit between various pension plans.) Thus, because nowhere in Act 57 does the General Assembly permit a claimant to benefit from funds contributed pursuant to statute from the Commonwealth, Employer argues that Claimant should be entitled to an offset of only those monies contributed by him to the pension plan.

Claimant rejects Employer's argument that because Act 205 affords a municipality that receives state funds the limited discretion to allocate the monies as it sees fit between its various pension plans, *Bascelli,* that somehow transforms the Commonwealth contribution into a township contribution. Claimant argues that Act 205 and the Supreme Court's decision in *Bascelli* make it clear that the funds the State provides in accordance with Act 205 constitute a state contribution to the municipal pension plans. Claimant emphasizes that, because the law requires that the municipal treasurer deposit the state aide into the pension funds and that the monies may only be used to defray the cost of the pension plan or plans, the Commonwealth contribution never become the township's money.

Indeed, the language of Section 402(g) of Act 205, entitled "Authorized expenditures of general municipal pension system State aide," supports Claimant's position. That section provides as follows:

> Any general municipal pension system State aid received by a municipality shall only be used to defray the cost of the pension plan or pension plans maintained by the municipality. If only one pension plan is maintained by the municipality, then *the total amount of the general municipal pension system State aid received by the municipality shall, within 30 days of receipt by the treasurer of the municipality, be deposited in the pension fund or the alternate funding mechanism applicable to the pension plan.* If more than one pension plan is maintained by the municipality, then the governing body of the municipality shall annually determine the proportion of the total amount of the general municipal system State aide received by the municipality which shall be credited to each pension plan and *the total amount of the general municipal pension system State aide received by the municipality shall, within 30 days of receipt by the treasurer of the municipality, be deposited in the pension funds or alternate funding mechanisms applicable to the respective pension plans* in accordance with that determination.

53 P.S. § 895.402(g) (emphasis added). Thus, we agree that Employer's discretion to allocate money between its pension funds does not cause the Commonwealth contribution to become an employer contribution.

For all of the above reasons, we affirm the Board order.

### ORDER

AND NOW, this 11th day of September, 2001, the November 9, 2000 order of the Workers' Compensation Appeal Board is hereby affirmed.

---

9. 53 P.S. § 895.405.