Denise KRAMER, Petitioner,

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (RITE AID COR-
PORATION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 16, 2001.
Decided Feb. 22, 2002.
Reconsideration Denied April 25, 2002.

Ronald L. Calhoon, Harrisburg, for petitioner.

Perry D. Merlo, Camp Hill, for respondent.

Before PELLEGRINI, Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Denise Kramer (Claimant) petitions for review of a June 26, 2001 order of the Workers' Compensation Appeal Board (WCAB) affirming the decision of a workers' compensation judge (WCJ) to deny Claimant's Petition to Review Compensation Benefit Offset (Offset Review Petition). The WCJ had determined that Rite Aid Corporation (Employer) was entitled, under section 204(a) of the Workers' Compensation Act (Act),[1] to take a credit for severance benefits paid to Claimant. We reverse.

Claimant sustained a work-related injury on February 20, 1998, while working at Employer's Shiremanstown, Pennsylvania facility. As a result, Claimant received temporary total disability benefits in the amount of $364.86 per week through June 28, 1998, when Claimant returned to work with injury-related restrictions. On March 12, 1999, Employer relocated its Shiremanstown facility to Maryland, and, as a consequence, Employer laid off the employees, including Claimant, who worked at that facility. Following the lay-off, Employer reinstated Claimant's workers' compensation benefits.

Subsequently, Claimant received a check from Employer in the amount of $3,355.02, representing the net amount of "severance" pay due Claimant as a result of Employer's relocation. The payment was part of a "Severance Agreement" contained in a January 7, 1998 Addendum to the most recent collective bargaining agreement (CBA) between Employer and Teamsters, Local 776, the union for Employer's employees (Union).[2]

On May 14, 1999, Employer sent Claimant a Notice of Compensation Benefits Off-

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 71(a).

2. The prior collective bargaining agreement, which covered the period from July 26, 1993 through July 26, 1997, contained a provision requiring Employer to maintain its facility in Shiremanstown for the duration of the agreement. (WCJ's Findings of Fact, No. 6; R.R.

set (Offset Notice), informing her that Employer, as authorized by section 204(a) of the Act, 77 P.S. § 71(a), intended to use the $3,335.02 severance as a credit against Claimant's workers' compensation benefits. (R.R. at 50a–51a.) As a result of the offset, Claimant did not receive any workers' compensation benefits from June 5, 1999 until August 10, 1999,[3] when total disability benefits once again were reinstated. (WCJ's Findings of Fact, Nos. 9–10.)

On May 20, 1999, Claimant filed an Offset Review Petition alleging that Employer's offset was unconstitutional and contrary to the Act. (R.R. at 1a–2a.) Employer filed an answer denying Claimants allegations, and, following a hearing, the WCJ issued a decision denying Claimant's Offset Review Petition. The WCJ held that the $3,355.02 received by Claimant under the CBA was, in fact, a severance benefit as defined in 34 Pa. Code § 123.2[4] and that Employer properly took an offset pursuant to section 204(a) of the Act. (R.R. at 10a–12a.) The WCJ also concluded that he lacked jurisdiction over Claimant's constitutional challenge to the Act's severance benefit offset provision in section 204(a). (WCJ's Findings of Fact, No. 2; WCJ's Conclusion of Law, No. 3; R.R. at 9a, 12a.) Following Claimant's appeal, the WCAB affirmed. Rejecting Claimant's reliance on pre-Act 57 precedent to support a contrary result,[5] the WCAB agreed that Employer was entitled to a credit for the $3,335.02 paid to Claimant. The WCAB then concluded that it, too, lacked authority to pass upon the constitutionality of the Act's provisions. (R.R. at 18a–22a.)

at 115a.) However, pursuant to the CBA, effective July 27, 1997 through July 27, 2000, Employer was allowed to relocate that facility out-of-state. In return, all employees affected by the move would receive the "severance" benefits enumerated in Addendum C of the CBA under the heading "Severance Agreement." Of these various benefits, the first listed was a lump-sum payment based on years of service to the company. (See WCJ's Findings of Fact, No. 7; CBA at 48–50, R.R. at 107a–09a.) The CBA conditioned receipt of the severance benefits upon the employees signing a release agreed to by the parties. On February 11, 1999, Claimant signed a Release Agreement providing, inter alia, that in return for receipt of severance benefits, she agrees: (1) to continue working at the Shiremanstown facility until released by management; (2) not to participate in any strikes, slowdowns, boycotts, suits or other actions against Employer; (3) to release Employer from any claim or suit arising out of employment with Employer that arose after ratification of the severance plan, other than any valid workers' compensation claim or any grievance under the CBA; and (4) that the benefits in the severance plan result from a collectively bargained agreement and are beyond those that Employer would otherwise be legally obligated to pay.

(WCJ's Findings of Fact, No. 8; O.R., Exhibit C–5.)

3. The $3,335.02 severance payment corresponded to nine and a half weeks of workers' compensation benefits for Claimant.

4. This is the definitional section of the regulations interpreting the provisions of the Act that authorize an offset of workers' compensation benefits by amounts received in unemployment compensation, Social Security (old age), severance and pension benefits, subsequent to the work-related injury. 34 Pa.Code § 123.1.

5. In 1993, the legislature amended section 204 of the Act, now section 204(a), to provide for a set-off against workers' compensation benefits for unemployment received for the same period of time. Section 4 of the Act of July 2, 1993, P.L. 190, 77 P.S. § 71(a). It was not until the 1996 amendments to the Act, commonly referred to as "Act 57," section 3 of the Act of June 24, 1996, P.L. 350, that the legislature supplemented section 204(a) to afford employers additional set-offs for an employee's receipt of severance payments, pension benefits and old age social security benefits, for injuries occurring on or after June 24, 1996.

■ Claimant now petitions this court for review,[6] arguing that the WCJ and WCAB erred in denying Claimant's Offset Review Petition. First, Claimant asserts that Employer was not entitled to a credit for the $3,335.02 payment because this payment did not fall within the definition of "severance" contained in the regulations. Alternatively, Claimant contends that, even if the payment is deemed to be severance, it is not subject to offset under section 204(a) of the Act. Claimant also renews her argument that section 204(a) of the Act, as amended in 1996 to provide for the offset of severance pay against workers' compensation benefits, is unconstitutional as violative of the Equal Protection Clauses of the U.S. and Pennsylvania Constitutions.[7]

■ The regulations interpreting section 204(a) define "severance benefit" as:

A benefit which is taxable to the employe and paid as a result of the employe's separation from employment by the employer liable for the payment of workers' compensation, including benefits in the form of tangible property. The term **does not include** payments received by the employe based on un-

used vacation or sick leave or **otherwise earned income.**

34 Pa.Code § 123.2 (emphases added). Claimant first argues that, although labeled "severance" by Employer, the $3,335.02 payment she received actually falls under the exclusion of "otherwise earned income." We disagree.

In this case, Claimant received her "severance" payment pursuant to paragraph 1 of Addendum C of the CBA, which, under the heading "Severance Agreement," provides in pertinent part:

Conditional upon the employees continued efforts per the terms of the [CBA], and the signing of a release agreed to by the parties, all employees . . .who are laid off voluntarily or involuntarily due to the closure of the Shiremanstown facilities, shall be provided the following severance benefits:

1. Payment for years of service according to the following schedule:

. . .

5 to 10 years service—$550.00 per year [8] . . . .

(R.R. at 54a; 107a.)

In her brief, Claimant makes several attempts to characterize the $3,335.02 as

---

6. Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

7. At the hearing before the WCJ, Claimant also argued that Employer forfeited its right to a credit by failing to comply with the notice requirements of 34 Pa.Code § 123.4(b) (stating that a claimant must be given notice that workers' compensation benefits will be offset at least twenty days prior to the taking of a credit under section 204(a) of the Act). The WCJ disagreed and found that Employer's Offset Notice provided Claimant with timely notice of the offset. (WCJ's Findings of Fact,

No. 14.) The WCAB agreed with the WCJ's finding when Claimant raised the timeliness argument again in her appeal to the WCAB. (WCAB op. at 2, R.R. at 19a.) In her brief to this court, Claimant claims that the WCJ and WCAB erred with respect to this issue, (see Claimant's brief at 18); however, Claimant does not raise the issue of notice in her Petition for Review to this court, (see R.R. at 23a–25a). Moreover, she fails to include the issue in the Statement of Questions Involved portion of her brief, (see Claimant's brief at 4), as required by Pa. R.A.P. § 2116(a). Therefore, we will not address the matter further.

8. Claimant had been with Employer for approximately nine years, four months. (R.R. at 40a.)

something other than a "severance" benefit. Claimant contends that Employer did not make the payment based simply on Claimant's individual severance of her employment relationship with Employer. According to Claimant, the payment actually represents reimbursement of benefits accrued or earned during the employee's past years of service,[9] paid out at the time of departure. Moreover, Claimant maintains that the provisions of the CBA authorizing the payment of these monies was a contractual buyout, made in exchange for the employees' permission for Employer to relocate. In this regard, Claimant asserts that Addendum C was added to the CBA pursuant to an agreement between Employer and the Union because Employer contemplated closing the Shiremanstown facility and wanted provisions in the newly negotiated CBA granting it permission to do so. Thus, Claimant maintains that, while the terms allowing the closure were under the title "Severance Agreement," Addendum C would more appropriately be titled "Relocation Agreement," providing affected employees with past accrued benefits in consideration for employees waiving various legal rights. We are unpersuaded by this argument.

■ Initially, we note that much of Claimant's argument is premised on "facts" which are not of record. The "Severance Agreement" negotiated by the Union provides only that Employer's Shiremanstown facility will be closed and that the employees affected by that closure will receive severance benefits. Nothing in the "Severance Agreement" itself limits Employer's ability to apply a severance pay credit under section 204(a) of the Act.[10] Because the record contains no evidence to establish that the payment in question is not severance as defined in the regulations,[11] Claimant's first argument must fail.

9. Claimant testified at the hearing before the WCJ that 8/9ths of the severance check was for work done prior to her injury. (R.R. at 40a.) Thus, Claimant contends that the payment deemed "severance" by Employer actually represents pre-injury earnings which cannot be used to offset post-injury compensation.

10. Claimant acknowledges that the wording of the "Severance Agreement" does not *preclude* application of the Act's set-off provision; nevertheless, Claimant asserts that, because the CBA contains no provision *permitting* Employer to offset any of these severance payments against workers' compensation benefits, the granting of the credit here essentially rewrites the terms of Addendum C and ignores its intent to reward Shiremanstown employees for past service to the company without regard to any work-related injury. Thus, Claimant contends, she should be receiving payment for her prior years of service as well as payment for weeks she is unable to work due to her work-related injury. We disagree. By enacting Act 57, the Pennsylvania legislature determined that a qualified employer was entitled to a credit for severance benefits. Where the "Severance Agreement" in the CBA contains no provision indicating that the laws of the Commonwealth will not be followed, Employer, if otherwise entitled to take advantage of the section 204(a) credit, could properly exercise rights provided under the Act even absent specific authorization in the CBA.

11. Although the evidence of record establishes that Employer used years of service to calculate the amount paid to Claimant as "severance" pursuant to paragraph 1 of the "Severance Agreement," there is nothing to indicate that Claimant *earned* these monies during her employment. Indeed, the CBA deals with earned benefits elsewhere in the "Severance Agreement," stating in paragraph 3 that: "All employees shall receive payment for all accrued but unused vacation, all unused personal days and any birthday holidays earned but not taken, including perfect attendance days." (R.R. at 107a.) Claimant does not contend that the severance which Employer claimed as a credit included these *earned* amounts. For this reason, we must reject Claimant's reliance on *Occidental Chemical Company v. Workers' Compensation Appeal Board (Knight)*, 756 A.2d 152 (Pa. Cmwlth.2000) (holding that where supplemental unemployment benefits were an ac-

Claimant next maintains that, even if the WCJ correctly determined that the $3,355.02 payment received by Claimant under the CBA was a severance benefit as defined in 34 Pa.Code § 123.2, Employer here was not entitled to an offset for such severance under section 204(a) of the Act. The set-off provisions of the Act, set forth in section 204(a), provide in pertinent part:

> The severance benefits *paid by the employer* ***directly liable for the payment of compensation*** and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award made under sections 108 and 306, except for benefits payable under section 306(c).

77 P.S. § 71(a) (emphases added). Thus, an injured employee who subsequently receives severance benefits paid by an employer directly liable for the payment of compensation, in effect, forfeits workers' compensation disability benefits in an amount corresponding to those severance benefits.

Claimant first notes that section 204(a) of the Act permits employers to credit such payments against workers' compensation only to the extent that severance benefits are *"paid by the employer"* itself. *See Dietrich Industries, Inc. v. Workers' Compensation Appeal Board (Shank),* 725 A.2d 252 (Pa.Cmwlth.1999). Claimant then asserts that Employer here is precluded from taking a credit against Claimant's total disability benefits because Employer presented no testimony or evidence as to the funding source of the monies paid Claimant. We must disagree. In fact, the record here clearly indicates that it was Employer that gave Claimant the severance check for $3,335.02, (R.R. at 52a), and there is no evidence that the money was funded from any other source.

■ Nevertheless, Claimant contends that Employer here is not entitled to a statutory credit even if it did fund payment of the severance benefit because Employer was not *"directly liable for the payment"* of Claimant's workers' compensation, as required under section 204(a) of the Act; rather, Employer's insurance carrier, the Traveler's Casualty Company, was the party directly liable for such payments. (*See* WCJ's Findings of Fact, No. 9; R.R. at 50a.) Claimant asserts that, if Employer made the severance payments, it clearly does not follow that insurer should reap the benefit by taking a credit for those payments. In effect, Claimant maintains that section 204(a) provides the severance credit only to self-insured employers. On this point, we agree with Claimant.

■ Statutory construction does not permit courts to ignore the plain and unambiguous language of a statute. *See* section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b) (stating that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."); *Latella v. Unemployment Compensation Board of Review,* 74 Pa.Cmwlth. 14, 459 A.2d 464 (1983). The plain language of section 204(a) provides that "[t]he severance benefits paid by the *employer directly liable for the payment of compensation* ....which are received by an employe shall also be credited against the amount of the award made ...." We perceive no ambiguity in

crued entitlement in the nature of wages, rather than payments in lieu of compensation made in relief of the claimant's inability to labor, the employer could not take a credit against the claimant's workers' compensation).

this language. To the contrary, we conclude that the statute at hand clearly identifies the entity entitled to benefit from the severance credit provided in this section; specifically, the offset is afforded to the employer, not the insurer, only if the *employer* is *directly* liable to a claimant for compensation.

■ The Act does not use the terms "employer" and "insurer" interchangeably. Rather, the Act distinguishes between the two by providing separate and distinct definitions of "employer" and "insurer" in sections 103 and 109 of the Act, respectively, 77 P.S. §§ 21 and 29.

> The term "employer," as used in this [A]ct, is declared to be synonymous with master, and to include natural persons, partnerships, joint-stock companies, corporations for profit, corporations not-for-profit, municipal corporations, the Commonwealth, and all governmental agencies created by it.

77 P.S. § 21.[12]

> "**Insurer**" means an entity subject to the act of May 17, 1921 (P.L. 682, No. 284), known as "The Insurance Company Law of 1921," [13] including the State Workmen's Insurance Fund, with which

an employer has insured liability under this act pursuant to section 305 or a self-insured employer or fund exempted by the Department of Labor and Industry pursuant to section 305. [14]

77 P.S. § 29.

Employer here entered into a contract with Traveler's Casualty Company, a carrier for workers' compensation insurance. Pursuant to that contract, Employer paid premiums to the insurance carrier which, in turn, assumed *direct* liability to the injured employee for the payment of workers' compensation benefits. *See* section 651 of The Insurance Company Law of 1921, 40 P.S. § 811 (stating that every policy of insurance against liability under the Workers' Compensation Act shall be construed to be a direct promise to the injured employee having a claim under such Act).

■ Because Employer is not directly liable for the payment of compensation to Claimant and because the entity that is directly liable for such compensation is not Employer, there is no entitlement to a credit pursuant to section 204(a).[15]

---

**12.** The only provision dealing with the status of the insurance carrier as compared with that of the employer is contained in section 401 of the Act, which provides:

> The term '**employer**,' *when used in this article*, shall mean the employer as defined in article one of this [A]ct, or his duly authorized agent, or his insurer if such insurer has assumed the employer's liability or the fund if the employer be insured therein.

77 P.S. § 701. (Emphasis added.) Although this definition would equate an employer with its insurer for purposes of Article IV of the Act, section 204(a) is included in Article II of the Act. Therefore, this more expansive definition of the term "employer" is not applicable to an employer's right to a credit for severance the employer pays to an injured employee; rather, where that entitlement is concerned, we must construe the

term "employer" as defined in section 103 of the Act.

**13.** Act of May 17, 1921, P.L. 682, *as amended.*

**14.** Section 305 of the Act, 77 P.S. § 1405, requires employers liable to pay compensation under the Act to insure the payment of such compensation either through the State Workmen's Insurance Fund or through any other insurance company or association authorized to insure such liability. The section also permits an employer to seek to exempt itself from insuring its liability for compensation by establishing that it has the financial ability to pay such compensation itself.

**15.** Although we base this conclusion on the plain, unambiguous language of the statute, we would reach the same result even if we

determined that the statute was ambiguous on this point. Where a statute is unclear, the court interpreting the statute must resort to the rules of statutory construction, the object of which is to ascertain and effectuate the intent of the legislature. *Meier v. Maleski,* 670 A.2d 755 (Pa.Cmwlth.1996), *aff'd,* 549 Pa. 171, 700 A.2d 1262 (1997).

To ascertain the legislative intent behind a statute, the court must begin with the presumption that the legislature did not intend any statutory language to exist as mere surplusage, *see* 1 Pa.C.S. § 1922(2); thus, whenever possible, courts must construe a statute so as to give effect to every word contained therein. Here, the legislature simply could have provided the credit to employers liable for the payment of workers' compensation. Consequently, by restricting the beneficiaries of the credit to employers *directly* liable for such compensation, the legislature indicated an intent to further narrow the class that might claim an offset pursuant to this provision of the Act. Moreover, we note that section 204(a) of the Act provides the severance credit only to employers, making no mention of insurers in that credit provision. Courts have often relied on the maxim *"expressio unius est exclusio alterius;"* that is, where the legislature expressly mentions one thing in a statute, we must assume that it intended to exclude all things omitted.

Finally, we agree with Claimant that it makes no sense to give the insurer here the benefit of an offset for severance paid by Employer because this would not comport with the purpose of the amended Act. Recently, in *Township of Lower Merion v. Workers' Compensation Appeal Board (Tansey),* 783 A.2d 878 (Pa.Cmwlth.2001), we discussed the general purpose of the 1996 amendments to the Act, and the set-off provisions of section 204(a) in particular. In doing so, we identified the dual goals underlying enactment of the legislation currently under scrutiny as the legislature's desire to (1) curtail the costs associated with work-related injuries and (2) eliminate a claimant's receipt of duplicate benefits for the same loss of earnings from the same injury. Neither of these goals is advanced by granting insurer here a credit for the severance paid by Employer.

The credit provision is designed to create a more economically desirable environment for businesses in Pennsylvania by cutting an employer's workers' compensation costs. Where an employer is self-insured and, thus, directly responsible to pay workers' compensation benefits, granting a credit against that workers' compensation in an amount equivalent to severance paid necessarily reduces the employer's workers' compensation costs. Indeed, the offset is made on a dollar-for-dollar basis. 34 Pa.Code § 123.1. However, where the employer is not the entity directly obligated to pay workers' compensation, there is no such cost reduction. Certainly, there can be no assurance, or even expectation, that an insurer would reduce an employer's workers' compensation insurance premium by any amount merely because the employer pays severance to its laid off employees.

Further, receipt of both severance benefits and workers' compensation benefits does not provide a workers' compensation claimant with an impermissible double recovery. We can perceive an identifiable commonality between payments made for the interruption of work by reason of injury and payments made for the interruption of work by reason of its unavailability, *see e.g. Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries),* 536 Pa. 490, 640 A.2d 386 (1994) (recognizing that both capacity to work and unavailability of work affect the extent of an injured employee's disability (loss of earning power)). Yet, it is inarguable that severance benefits, because they are paid to persons as a result of their separation from employment regardless of injury, are not disability benefits. On the other hand, workers' compensation benefits are part of a comprehensive plan designed to compensate employees who suffer work-related injuries for the loss of income resulting from such injuries. Recognizing the different intent behind each of these payments, we refused to permit an employer to offset severance payments against workers' compensation prior to the 1996 amendments to the Act. *EMI Company v. Workers' Compensation Appeal Board (Rathman),* 738 A.2d 33 (Pa.Cmwlth.1999). Moreover, even after enactment of the 1996 amendments to the Act, we have held that an employer may take advantage of the credit for pension or severance benefits received by a claimant only to the extent that those benefits are employer-funded. *Township of Lower Merion* Thus, we denied an employer's attempt to offset the portion of a claimant's pension benefits contributed by the Commonwealth. *Id.* If an employer can take an offset only for severance or pension amounts that it actually pays, then, it logically follows that the employer paying the severance or pension should be the only entity entitled to reap the benefit of the

Accordingly, we reverse.[16]

### ORDER

AND NOW, this 22nd day of February, 2002, the order of the Workers' Compensation Appeal Board, dated June 26, 2001, is hereby reversed.

PELLEGRINI, Judge, concurring.

While I concur in the result reached by the majority, I disagree with the majority's rationale. I disagree with the majority's rationale that because workers' compensation benefits were paid by Rite Aid Corporation's (Employer) insurance carrier and not Employer itself, no offset was permitted under Section 204(a) of the Workers' Compensation Act.[1] Instead, I would hold that although Employer would be entitled to an offset, the funds Denise Kramer (Claimant) received were not "severance benefits" but "otherwise earned income" as that term is defined in 34 Pa. Code § 123.2 for which an offset is not permitted.

Pursuant to the collective bargaining agreement (CBA) effective July 26, 1993 through July 26, 1997 between Employer and Teamsters Local 776 (Union), Employer was prohibited from relocating its Shiremanstown, Pennsylvania facility out-of-state. However, pursuant to Addendum C of the CBA entitled "Severance Agreement" which went into effect on July 27, 1997, Employer was permitted to relocate the Shiremanstown facility out-of-state provided that employees who were laid off due to the closure received "severance benefits." Among the benefits listed in Addendum C was a lump sum payment to employees based upon years of service with Employer, payment for accrued vacation days, personal days etc. ... which were earned by employees but not taken, and earned pension credits and continued health insurance credit based on years of service. Addendum C further provided that receipt of the benefits was conditioned upon employees signing a release agreed to by the parties.

On February 20, 1998, while working for Employer's Shiremanstown facility, Claimant sustained a work-related injury to her neck and began receiving temporary disability benefits in the amount of $364.86 per week. Subsequent to Claimant's return to work in June 1998, Employer relocated the facility to Maryland, at which time Claimant was laid off and her workers' compensation benefits were reinstated. Pursuant to Addendum C, Claimant signed a release agreement which provided that in return for receipt of "severance benefits," she would continue to work at the facility until released by management, not participate in any strikes, slowdowns, boycotts, suits or other action against Employer, and would release Employer from all claims or suits arising out of employment other than workers' compensation claims or a grievance under the CBA. Claimant then received a check from Employer in the amount of $3,355.02 representing the net amount of severance pay due.

On May 14, 1999, Employer sent Claimant a notice of compensation benefits offset informing her that it intended to use the "severance benefits" as an offset against her workers' compensation benefits pursuant to Section 204(a) of the Act, 77 P.S.

offset. This will not occur where, as here, severance benefits and workers' compensation benefits are funded by different sources.

**16.** Because of our disposition here, we need not address Claimant's final argument chal-

lenging the constitutionality of the severance offset provision in the 1996 amendments to the Act.

**1.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 71(a).

§ 71(a), which provides that an employer directly liable for compensation benefits can use severance benefits it paid as credit against the compensation award. Severance benefits are defined in 34 Pa.Code § 123.2. as follows:

> A benefit which is taxable to the employe and paid as a result of the employe's separation from employment by the employer liable for the payment of workers' compensation, including benefits in the form of tangible property. The term does not include payments received by the employe based upon unused vacation or sick leave or otherwise earned income.

As a result of the offset, Claimant did not receive compensation benefits from June 5, 1999 until August 10, 1999, when total disability benefits were reinstated.

Contending that the payment of "severance benefits" could not offset her compensation benefits because they were "otherwise earned income," Claimant filed an offset review petition. The WCJ denied the petition determining that the money received by Claimant was paid as a result of her separation from employment and constituted "severance benefits" as that term is defined in 34 Pa.Code § 123.2. The Board affirmed and this appeal followed.

On appeal, the majority determines that there are no facts of record which would establish that the payment was not "severance benefits" as defined in 34 Pa.Code § 123.2. However, it goes on to determine that because Employer was not self-insured, its carrier, and not Employer, was directly liable for the payment of Claimant's compensation benefits and Employer was not entitled to credit pursuant to Section 204(a) of the Act.

While I do not disagree with the majority's outcome of not allowing the offset, I disagree with the majority's rationale that because its insurance carrier, and not Employer, is directly liable for compensation payments, an offset cannot be taken pursuant to Section 204(a) of the Act, 77 P.S. § 71(a). Section 204(a) provides in pertinent part:

> [S]everance benefits paid by the employer directly liable for the payment of compensation and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award...

The majority holds that because Employer pays a premium to its carrier and the carrier itself is directly responsible for the disbursement of the specific compensation award, Section 204(a) is inapplicable. However, this ignores that an employer is always ultimately liable for compensation payments, not the carrier. Although an insurance carrier may directly disburse a compensation award to an injured employee, the only source of the funds is from the employer whose rates, for the most part, are experienced based.

Although I believe Employer (and its insurance carrier) is entitled to an offset for any "severance benefits" it pays, I do not believe, in this case, that Claimant received "severance benefits" as that term is defined in 34 Pa.Code § 123.2. Instead, because payment was premised upon what Claimant had actually earned and in lieu of exercising her bargained-for contractual rights, the benefits constituted "otherwise earned income." I believe Addendum C established that Employer's payment was based upon what Claimant was entitled to under her employment contract, including accrued sick days, vacation days and accrued pension benefits, which are expressly excluded by 34 Pa.Code § 123.2. Moreover, payment under the Addendum was conditioned upon Claimant signing a re-

lease in which she gave up significant bargained-for rights, including the right to strike and participate in suits against Employer, and also released Employer from all claims pursuant to her employment contract, excluding workers' compensation claims and claims under the collective bargaining agreement. Because payments of benefits already accrued are expressly excluded under 34 Pa.Code § 123.2, as well as requiring Claimant to sign a release to receive those payments, they are not "severance benefits" as that term is normally defined and should be treated as "otherwise earned income."

Because I disagree with the majority's rationale, I concur in the result only.