Mary HULMES, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (RITE AID CORPORATION), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 7, 2002.
Decided Dec. 10, 2002.

Steven O. Spahr, Harrisburg, for petitioner.

Perry D. Merlo, Camp Hill, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, J., and LEAVITT, J.

OPINION BY Judge LEAVITT.

Mary Hulmes (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) affirming the right to give Rite Aid Corporation (Employer) a credit against Claimant's workers' compensation benefits. Employer asserted this credit for a severance payment made to Claimant when it closed the facility where she worked, and the Workers' Compensation Judge (WCJ) allowed the credit. We vacate the Board's order and remand.

The facts relevant to this appeal are not extensive. Claimant sustained a work-related injury while working at Employer's warehouse in Shiremanstown, Pennsylvania. She had returned to a light-duty job

when, on March 14, 1999, she was laid off as a result of Employer's decision to relocate the Shiremanstown operation to Maryland. On March 16, 1999, Claimant received a check from Employer in the amount of $2,870.53, pursuant to a severance agreement contained in a January 7, 1998 addendum to the collective bargaining agreement in force at the time of Claimant's furlough.[1]

Employer reinstated Claimant's total disability benefits on March 14, 1999. However, her benefits were suspended from June 5, 1999 to July 27, 1999 pursuant to Employer's Notice of Workers' Compensation Benefits Offset. Simply, Employer claimed that Section 204(a) of the Act[2] authorized a credit of $2,870.53 against the disability benefits owed to Claimant. Claimant's benefits resumed on July 27, 1999.

Claimant filed a Petition for Review of Offset asserting that Employer's suspension of her workers' compensation benefits was not authorized. After a hearing, the WCJ concluded that Employer violated Section 204(a) of the Act by taking a credit for the vacation pay, personal pay and the medical insurance buyout and assessed Employer a 20% penalty. However, the WCJ allowed the credit for severance pay and unemployment compensation. The Board affirmed the decision of the WCJ,

---

1. The Agreement entered into between Claimant's union and Employer provides in pertinent part:

   *Addendum C*

   *Severance Agreement*

   Conditional upon the employees continued efforts per the terms of the Contract, and the signing of the release agreed to by the parties, all employees, and those hired hereafter, not on probationary status, who are laid off voluntarily or involuntarily due to the closure of the Shiremanstown facilities, shall be provided the following severance benefits:
   1. Payment for years of service according to the following schedule . . .
   Two days after Claimant was laid off from employment, Claimant received a check in the amount of $2,870.53, which included severance pay pursuant to the Agreement.

2. Section 204(a) of the Worker's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 71, permits certain credits to be taken as a workers' compensation benefit payment. It states:

   No agreement, composition, or release of damages made before the date of any injury shall be valid or shall bar a claim for damages resulting therefrom; and any such agreement is declared to be against the public policy of this Commonwealth. The receipt of benefits from any association, society, or fund shall not bar the recovery of damages by action at law, nor the recovery of compensation under article three hereof; and any release executed in consideration of such benefits shall be void: Provided, however, That if the employe receives *unemployment compensation benefits, such amount or amounts so received shall be credited* as against the amount of the award made under the provisions of sections 108 and 306, [FN 1] except for benefits payable under section 306(c) or 307.[FN 2] Fifty per centum of the benefits commonly characterized as "old age" benefits under the Social Security Act (49 Stat. 620, 42 U.S.C. § 301 *et seq.*) shall also be credited against the amount of the payments made under sections 108 and 306, except for benefits payable under section 306(c): Provided, however, That the Social Security offset shall not apply if old age Social Security benefits were received prior to the compensable injury. *The severance benefits paid by the employer directly liable for the payment of compensation* and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe *shall also be credited against the amount of the award made under sections 108 and 306,* except for benefits payable under section 306(c). The employe shall provide the insurer with proper authorization to secure the amount which the employe is receiving under the Social Security Act.

   77 P.S. § 71(a) (emphasis added).

and Claimant then filed the instant petition for review.

▮▮▮ On appeal,[3] Claimant raises two issues. She contends, first, that Employer had no right to offset her workers' compensation benefits because the severance payment was contractually-obligated, and it was calculated on the basis of her years of service. As compensation for pre-injury work, the payment was not "severance" within the meaning of the statute or applicable regulation, but, rather, "earned income." [4] Second, Claimant contends that if the payment is a severance payment within the meaning of the Act, then the Act is unconstitutional.

We considered these issues in *Kramer v. Workers' Compensation Appeal Board (Rite Aid Corporation)*, 794 A.2d 953 (Pa. Cmwlth.2002). Indeed, *Kramer* involved the same Employer, the same closing of the Shiremanstown warehouse and a claimant, who, like Claimant, was a member of Teamsters Local 776. We are precluded by the doctrine of collateral estoppel from reconsideration of these issues.

▮▮▮ Collateral estoppel precludes re-litigation of issues of law or fact in a subsequent action. *Galloway v. Workmen's Compensation Appeal Board (Pennsylvania State Police)*, 690 A.2d

1288, 1291 (Pa.Cmwlth.1997). Collateral estoppel will apply only when the following factors are met: (1) the party against whom the plea is asserted was a party *or is in privity* with a party in the prior adjudication; (2) the legal or factual issues in the prior adjudication are identical to the ones presented in the later action; (3) there was a final judgment on the merits; (4) the issues were actually litigated; and (5) the determination in the prior proceeding was essential to the judgment. *Callaghan v. Workers' Compensation Appeal Board (City of Philadelphia)*, 750 A.2d 408, 412 (Pa.Cmwlth.2000) (emphasis added).

This Court in *Kramer* held that the payment made by Rite Aid to the claimant was severance as defined by the pertinent regulation.[5] *Kramer*, 794 A.2d at 957. The Court reasoned that the collective bargaining agreement by its terms did not limit Employer's ability to apply a severance credit under Section 204(a) of the Act. Further, the record did not contain enough facts to support the claimant's argument that the members of Teamsters Local 776 "earned" the severance by agreeing not to strike or to obstruct the closing of the Shiremanstown warehouse.

However, this Court also held in *Kramer* that Rite Aid was not entitled to the

---

**3.** Our review is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Dietrich Indus., Inc. v. Workers' Compensation Appeal Bd. (Shank)*, 725 A.2d 252, 253 n. 3 (Pa.Cmwlth.1999).

**4.** Employer vigorously contests this factual assertion. It argues that Employer did not need the permission of the union, Teamster Local 776, to close the plant and that, in any case, the record is devoid of evidence to support the claim. Employer asserts that the issue addressed in the collective bargaining agreement was, simply, the manner of calculating the severance benefit.

**5.** Although the Act does not define severance, the pertinent regulation provides:

> Severance benefit—A benefit which is taxable to the employee and paid as a result of the employee's separation from employment by the employer liable for the payment of workers' compensation, including benefits in the form of tangible property. The term does not include payments received by the employee based on unused vacation or sick leave or otherwise earned income.

34 Pa.Code § 123.2. Thus, severance is a taxable benefit paid to an employee who separates from employment for any reason.

credit under Section 204(a) because its insurance carrier, Traveler's Insurance Company, was the party directly liable for the payment of compensation. *Kramer*, 794 A.2d at 958. The Court reasoned that under the plain language of Section 204(a), the Employer must be "directly liable for the payment of compensation" to receive the credit.[6]

We disagree, however, that the record here supports the factual premise to the conclusion in Kramer, *i.e.*, that the insurer, not Employer, was liable for the payment of Claimant's workers' compensation benefits. The premise to the *Kramer* reasoning is that the workers' compensation benefit was funded by Travelers because it issued a workers' compensation policy to Employer. In fact, the benefit may have been fully funded by Employer through a retrospective premium arrangement, a minimum premium plan or any of a number of devices by which employers fund the payment of the workers' compensation benefit and the insurer, in effect, only performs the claims adjusting function. Accordingly, we remand to the Board for additional findings on the funding arrangement between Travelers and Employer for the policy in question.

We are bound by the doctrine of collateral estoppel. The two cases are identical as to the facts and identical as to the legal issues litigated to final judgment. The only difference is in the parties. Claimant, however, is in privity with the claimant in *Kramer*. *Callaghan*, 750 A.2d at 412. Both were members of the same union, Teamsters Local 776, and both asserted rights under the same contract. Because all of the factors for collateral estoppel are met, we conclude that Employer may assert a right to offset Claimant's workers' compensation benefits by the amount paid as "severance." We are also bound by the legal conclusion that an employer is not liable for workers' compensation benefits when the risk has been transferred to an insurer by the payment of premium. However, the record here does not contain the facts necessary to conclude that Travelers, not Employer, funded the benefits.

For these reasons, we remand the case to the Board for additional fact-finding. Should it be determined that the arrangement by which Claimant's workers' compensation benefits was, in effect, a fully-insured one, then the Board should, on the basis of *Kramer*, reverse.[7] If the Board finds that Employer funded the benefits, then the Board may enter an appropriate award.

## ORDER

AND NOW, this 10th day of December, 2002, the order of the Workers' Compensation Appeal Board in the above-captioned matter is vacated and remanded.

Jurisdiction relinquished.

---

6. In *Kramer*, this Court never addressed whether Section 204(a) violated the Equal Protection Clause because the claimant failed to raise the issue in her petition for review to this Court and also in her statement of questions involved in her brief as required by Pa. R.A.P. 2116(a). *Kramer*, 794 A.2d at 956 n. 7.

7. In the interest of judicial economy, we will not address Claimant's argument that Section 204(a) violates the Equal Protection Clause of the 14th Amendment unless, and until, Claimant seeks review of the Board's order on remand.