James CROOM, Petitioner

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (PENNSYLVANIA
HOSPITAL), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 10, 2004.

Decided Jan. 12, 2005.

Brian R. Steiner, Philadelphia, for peti-
tioner.

Hilary S. Cornell, Philadelphia, for re-
spondent.

BEFORE: McGINLEY, Judge, and
COHN JUBELIRER, Judge, and
FLAHERTY, Senior Judge.

OPINION BY Judge McGINLEY.

James Croom (Claimant) suffered a work-related lumbosacral strain on July 1, 1999, while in the employ of Pennsylvania Hospital (Employer). Pursuant to a notice of compensation payable, Claimant received weekly compensation of $392.12 based on an average weekly wage of $588.18. Claimant's benefits were suspended effective December 27, 1999, pursuant to a supplemental agreement following Claimant's return to work. Pursuant to another supplemental agreement, Claimant's benefits were reinstated on January 18, 2000, following a recurrence of Claimant's disability.

On April 20, 2001, Employer issued a notice of workers' compensation benefits offset which indicated that beginning October 1, 2000, an offset in the amount of $115.16 would be deducted from Claimant's compensation benefits based on

Claimant's receipt of a pension. Also, the same day, Employer petitioned to modify benefits because Employer was not credited even though Claimant was receiving a pension.

On or about December 17, 2002, Claimant sought review of the compensation benefit offset and alleged that the offset was illegal as there was no provision in Workers' Compensation Act (Act)[1] that automatically authorized Employer to take an offset without permission from a workers' compensation judge and that the offset was also improper because Employer was not directly liable for compensation. Claimant also sought penalties based upon the unauthorized procedure used by Employer to take the offset.[2]

The workers' compensation judge (WCJ) consolidated the petitions. The parties stipulated that Employer funded one hundred percent of the pension and that the credit offset began in April 2001. The parties also stipulated that receipt of the pension commenced on October 1, 2000. Claimant argued that the Notice of Pension Benefit Offset Form was incorrect because he believed that Employer was only entitled to a "dollar for dollar" credit based on what Employer put into the plan rather than a credit that took into account investment income. Claimant also argued that the ending date of the credit was not stated on the form and there were no calculations to explain how Employer arrived at the credit amount of $115.16 per week.

William M. Gorenstein (Gorenstein), assistant vice president of finance of the University of Pennsylvania Health System (System), Employer's parent company, identified a self-insurance permit from the Department of Labor and Industry for Employer which established Employer was self-insured for workers' compensation purposes.[3] Notes of Testimony, August 22, 2002, (N.T.) at 4–5; Reproduced Record (R.R.) at 24a–25a. Gorenstein testified that Employer was responsible for paying workers' compensation benefits for its injured employees and that the trustees of the University of Pennsylvania were not responsible. N.T. at 6–7; R.R. at 26a–27a. Gorenstein explained that Employer has a third party administrator for its workers' compensation files, ARCAP, which made payments from funds supplied by Employer. N.T. at 10–12; R.R. at 30a–32a. On cross-examination, Gorenstein admitted that he did not know if ARCAP commingled the funds from the various entities associated with the System into one account. N.T. at 18–19; R.R. at 38a–39a. Gorenstein did not know if Employer had its own surety bond or relied on the bond of the Trustees of the University of Pennsylvania. N.T. at 23; R.R. at 43a.

In a decision circulated September 25, 2003, the WCJ denied the modification petition and granted Claimant's review petition. The WCJ reinstated Claimant's

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2626.

2. The WCJ granted the penalty petition and determined that Employer did not comply with the Act or regulations when it failed to give Claimant twenty days notice before the offset was taken, did not indicate how the offset was calculated, and did not provide any supporting documentation. The WCJ assessed a penalty of twenty percent of the amount Employer had offset. Employer appealed the grant of the penalty petition to the Board which affirmed. The penalty award is not before this Court.

3. The Self–Insurance Permit stated, "The following employers are authorized to self-insure their workers' compensation liability under the permit issued to Trustees of the University of Pennsylvania on 08/31/2001:.... Pennsylvania Hospital of the Univ. of PA Health System." Self–Insurance Permit, August 31, 2001, at 1.

weekly compensation in the amount of the offset retroactive to April 1, 2001, plus interest on the amount of compensation due and owing. The WCJ made the following relevant determinations:

16. According to Mr. Gorenstein's testimony, this Employer would directly benefit from a pension benefit offset because it would be assessed less by AR-CAP for the payment of workers' compensation benefits. This testimony from Mr. Gorenstein is credible because he is the controller for this Employer and therefore has knowledge of its financial transactions.

. . . .

### CONCLUSIONS OF LAW

1. This Employer, Pennsylvania Hospital, is a self-insured employer for purposes of payment of workers' compensation benefits, and is directly responsible for the payment of workers' compensation benefits for each of its injured employees including the Claimant. This Employer funded 100 percent of the pension benefits Claimant receives. In addition, this Employer would realize a savings in the amount of workers' compensation benefits it pays as a result of this pension benefit offset.

2. This Employer is entitled to 100 percent of the credit for Claimant's pension benefits under Section 204(a) of the Act, if the benefit offset were taken in accordance with the Act and Bureau regulations.

3. However, this Form LIBC–761 was not correctly completed, as it did not indicate how the offset was calculated and did not provide the supporting documentation required. Claimant challenges the accuracy of the offset amount. Therefore, when the Employer took the credit for the benefit offset of $115.16 as of April 1, 2001 and ongoing, it was contrary to the Workers' Compensation Act and Bureau regulations.

4. The Employer did not give the Claimant 20 days notice prior to commencing taking the credit for Claimant's pension benefit offset, so this Modification Petition asking for a modification as of October 1, 2000 shall be denied.

WCJ's Decision, September 25, 2003, Findings of Fact No. 16 & Conclusions of Law Nos. 1–4 at 4–6; R.R. at 54a–56a.

Employer appealed to the Workers' Compensation Appeal Board (Board) and contended that the WCJ erred when she denied the modification petition. The Board reversed and determined that Employer was entitled to a credit from October 1, 2000, the date Claimant began to receive pension benefit payments:

Although Defendant [Employer] failed to properly notify Claimant or properly complete Form LIBC–761 in accordance with the Regulations, we do not believe this eliminates Defendant's [Employer] entitlement to the offset. As the language of the Act indicates, 'the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe *shall* also be credited against the amount of the award made . . .'. . . .

. . . .

In light of the specific use of the term 'shall' in Section 204(a) of the Act and in light of the Court's statement that an employee who receives a pension following a work injury 'forfeits' compensation benefits *in an amount corresponding to pension benefits funded by an employer,* we believe the Judge erred in denying Defendant's Modification Petition. (Citations omitted. Emphasis in original).

Board Opinion, July 15, 2004, at 4–5; R.R. at 61a–62a.

Claimant contends that the Board erred when it reversed the WCJ's denial of the pension offset.[4] Claimant asserts that Employer was not entitled to an offset because it was not directly liable for the payment of workers' compensation benefits. According to Claimant, the Trustees of the University of Pennsylvania, not Employer, pay workers' compensation benefits because the Trustees of the University of Pennsylvania hold the surety bond for self-insured status. Claimant also asserts that ARCAP was not the third party administrator for Employer but for the Trustees of the University of Pennsylvania.

Section 204(a) of the Act, 77 P.S. § 71(a), provides in pertinent part:

> The severance benefits paid by the employer directly liable for the payment of compensation and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award made under sections 108 and 306, except for benefits payable under section 306(c).

In *Kramer v. Workers' Compensation Appeal Board (Rite Aid Corp.)*, 794 A.2d 953 (Pa.Cmwlth.2002), *petition for allowance of appeal granted*, 573 Pa. 32, 820 A.2d 700 (2003), this Court determined that an employer is only entitled to an offset under Section 204(a) of the Act if the employer is directly liable for payment of workers' compensation benefits. In *Kramer*, Denise Kramer (Kramer) received workers' compensation benefits for approximately four months before she returned to work with restrictions. Less than a year later, Rite Aid Corporation (Rite Aid) closed the plant where Kramer

worked. Pursuant to a collective bargaining agreement, Kramer received a severance check in the amount of $3,355.02. Rite Aid sent Kramer a notice of compensation benefits offset and informed her that it intended to use the severance as credit against her workers' compensation benefits. Kramer filed an offset review petition which the WCJ denied. The Board affirmed. *Kramer*, 794 A.2d at 954–955.

This Court reversed because Rite Aid was not the party "directly liable for the payment" of Kramer's workers' compensation benefits. Rather, Rite Aid's insurer, Traveler's Casualty Company, contracted with Rite Aid to assume direct liability of Rite Aid's workers' compensation insurance payments. Therefore, Rite Aid was not directly liable and was not entitled to the offset under Section 204(a). *Kramer*, 794 A.2d at 958–959.

 Here, the WCJ determined that Employer was a self-insured employer for purposes of workers' compensation benefits and was directly responsible for the payment of workers' compensation benefits for its injured employees. The WCJ reached this conclusion based on the testimony of Gorenstein who explained that while ARCAP was a third party benefits administrator, Employer actually paid the workers' compensation benefits. Employer also introduced the self-insurance permit from the Department of Labor and Industry which listed Employer as an approved self-insured. The WCJ found Gorenstein credible. The WCJ has the exclusive province over questions of credibility and evidentiary weight and is free to accept or reject the testimony. *General Electric Co. v. Workmen's Compensation*

---

**4.** Our review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether

constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth.15, 589 A.2d 291 (1991).

*Appeal Board (Valsamaki)*, 140 Pa. Cmwlth. 461, 593 A.2d 921, *petition for allowance of appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991). This Court will not disturb a WCJ's finding when it is supported by substantial evidence. *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock)*, 667 A.2d 262 (Pa. Cmwlth.1995).

■ Under *Kramer*, Employer was entitled to a credit from the time Claimant commenced the receipt of pension payments. The Board did not err when it reached this conclusion and reversed the denial of the modification petition. As the WCJ determined, Employer was self-insured for purposes of workers' compensation and was directly liable for the payment of workers' compensation benefits. Although Claimant argues that the Trustees of the University of Pennsylvania pay the workers' compensation benefits because they hold the surety bond, he submitted no evidence to support that assertion and did not offer any statutory or case law to support the proposition that the holder of the surety bond is the insurer when the Department of Labor and Industry states that Employer, a corporation, is self-insured.[5]

Accordingly, we affirm.

### ORDER

AND NOW, this 12th day of January, 2005, the order of the Workers' Compensa-tion Appeal Board in the above-captioned matter is affirmed.

---

5. Claimant also asserts that if a pension offset is allowable then the offset should be calculated based on the amount contributed by Employer and that any offset should be based on the dollars put into the plan rather than based on the percentage of funding. For example, because Employer funded one hundred percent of the pension benefits, Claimant argues that Employer should only be·entitled to a credit based on its actual contributions and not on the contributions plus the investment income. This Court notes that Claimant failed to raise this issue in the Statement of Questions Involved in his brief. Consequently, this issue is waived. *See* Pa.R.A.P. 2116; *Coraluzzi v. Commonwealth*, 105 Pa.Cmwlth. 305, 524 A.2d 540 (1987).