**Joseph J. GAUGHAN, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PENNSYLVANIA STATE POLICE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 21, 2010.

Decided July 28, 2010.

Ian J. Blynn, Harrisburg, for petitioner.

Sheilah A. Tone, Scranton, for respondent.

BEFORE: LEADBETTER, President Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY President Judge LEADBETTER.

A retired Pennsylvania State Police (PSP) trooper, Joseph J. Gaughan (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming an order of a Workers' Compensation Judge (WCJ) to deny his petition to review benefit offset. This case concerns the application of Section 204(a) of the Workers' Compensation Act (Act),[1] which provides that an employer is entitled to an offset credit for pension benefits received by a claimant to the extent that the pension is funded by the employer directly liable for payment of compensation.[2] The sole issue on appeal is whether that portion of the PSP's pension obligations attributable to contributions from the Motor License Fund should be considered "funded by the employer" for purposes of calculating the offset under Section 204(a). We affirm, in accordance with the Board's determinations that 1) the Commonwealth is both the entity funding PSP's portion of Claimant's pension benefits and the one liable for paying workers' compensation benefits; and 2), PSP receives all of its funding, regardless of its original source, from the State Treasury.

The background of this case is as follows. In May 1981, Claimant began work-ing for PSP. On August 17, 2005, Claimant sustained a compensable work injury when a group of juveniles attacked him. PSP's third-party benefits administrator issued a notice of compensation payable on September 1, 2005, accepting liability for a right shoulder, cervical and lumbar contusion. As of August 18, 2005, Claimant began receiving total disability benefits at a weekly rate of $716, based on an average weekly wage of $1593.62.

In July 2006, Claimant took regular retirement based on his twenty-five years of service with PSP. He receives pension benefits from PSP through the State Employees' Retirement System (SERS), which is a defined benefit plan.[3] On November 2, 2006, PSP's third-party benefit administrator issued a notice of workers' compensation benefit offset, asserting a credit in the weekly amount of $867.32 pursuant to Section 204(a) of the Act. Beginning November 27, 2006, PSP began deducting an offset credit in that amount from Claimant's weekly workers' compensation indemnity benefits of $716, resulting in a reduction of his weekly wage-loss benefits to zero.

In support of his petition to review benefit offset, Claimant indicated that he currently receives a monthly pension of $4200, but that he also had anticipated receiving workers' compensation benefits in the weekly amount of $716. Further, he acknowledged that he took a regular retire-

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 71(a).

2. The exact language from the pertinent part of Section 204(a) is as follows:

   The severance benefits paid by the employer directly liable for the payment of compensation and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award made under sections 108 [occupational disease] and 306 [disability benefits], except for benefits payable under section 306(c) [specific loss benefits].

3. A "defined benefit plan" is one "in which the benefit level is established at the commencement of the plan and actuarial calculations determine the varying contributions necessary to fund the benefit at an employee's retirement." 34 Pa.Code § 123.2.

ment, as opposed to a disability retirement, based on his twenty-five years of service with PSP. Despite the fact that he took regular retirement, Claimant cited his injuries and subsequent inability to continue working as a station commander as his primary reason for retiring.

Claimant also presented the testimony of Bruce Edwards, president of the Pennsylvania State Troopers Association. The Association is the collective bargaining unit for all state troopers in Pennsylvania and, as president and lead negotiator, Mr. Edwards is familiar with PSP's budget. He testified that PSP's budget is unique in that, in addition to the general funds received from the Commonwealth, anywhere from 73 to 75% of the budget is funded by special funds in the form of the Motor License Fund. Mr. Edwards admitted that the Fund is part of the Governor's executive budget.

In opposition to Claimant's petition, PSP presented the testimony of Susan C. Hostetter, Director of the Bureau of Benefits Administration for SERS, and Brent Mow-

ery, an actuary employed by the Hay Group as a senior consultant providing actuarial consulting services to SERS. The WCJ accepted their testimony as credible and concluded that the benefit offset was properly calculated in accordance with actuarial principles.[4] Accordingly, the WCJ determined that PSP met its burden of proving its entitlement to an offset against Claimant's ongoing workers' compensation benefits based on his receipt of retirement pension benefits in the amount set forth in the notice of workers' compensation benefit offset. The Board affirmed and Claimant's timely appeal to this Court followed.[5]

■ As an initial matter, we note that an employer bears the burden of establishing entitlement to the pension benefit offset. *City of Phila. v. Workers' Comp. Appeal Bd. (Andrews)*, 948 A.2d 221 (Pa. Cmwlth.2008). Credible actuarial evidence is sufficient to meet the employer's burden of proving the extent to which it funded a defined benefit pension plan and to form the basis for the calculation of the pension

4. In pertinent part, the WCJ made the following fact-findings concerning Employer's witnesses:

> 5. ... Ms. Hostetter testified that prior to December 31, 1995, claimant's contributions to the benefit plan amounted to $23,942.08 and that claimant contributed an additional $36,612.44 from January 1, 1996 forward. Using actuarial calculations, Ms. Hostetter testified that claimant's contributions amount to total employee funding towards his retirement pension of $180,897.33 with an employer-funded portion of $481,643.67. Applying an annuity factor to the employer-funded portion of the pension plan, Ms. Hostetter calculated an annual amount of $45,107.04 attributable to the employer-funded portion, yielding a monthly offset amount of $3,764.17 which, divided by 4.34, yields a weekly pension benefit offset in the amount of $867.32.
> 6. ... Mr. Mowery testified that since SERS is a defined benefit plan, claimant's

retirement benefit was calculated at the time of his retirement and using claimant's salaried history and length of service, Mr. Mowery calculated claimant's maximum single life annuity as $5,177.93 with a total present value of $662,541.00. Mr. Mowery calculated the total present value of claimant's contributions with interest as of his retirement date equal $180,897.33. Deducting claimant's funded portion from the total present value of claimant's maximum single life annuity as of the date of retirement yields an employer-funded amount of $481,643.67. Using the same actuarial calculations employed to determine claimant's share of the pension funding yields the amount of the employer-funded pension benefit offset amount.

WCJ's Findings of Fact Nos. 5 and 6.

5. This case presents a question of law over which we have plenary review. *Twp. of Lower Merion v. Workers' Comp. Appeal Bd. (Tansey)*, 783 A.2d 878 (Pa.Cmwlth.2001).

offset. *Dep't of Pub. Welfare v. Workers' Comp. Appeal Bd. (Harvey),* —— Pa. ——, 993 A.2d 270 (2010); *City of Phila. v. Workers' Comp. Appeal Bd. (Grevy),* 968 A.2d 830 (Pa.Cmwlth.2009), *appeal denied,* —— Pa. ——, 992 A.2d 890 (2010). Claimant does not contest the accuracy of the calculations made by Employer's two expert witnesses, whose testimony the WCJ accepted as credible. Such credibility determinations are binding on appeal. *Kennelty v. Workers' Comp. Appeal Bd. (Schwan's Home Serv., Inc.),* 594 Pa. 12, 934 A.2d 692 (2007).

Nonetheless, Claimant argues that the amount of the offset credit should have been reduced by approximately 75% to reflect the amount equal to the contributions to the pension from the Motor License Fund. In support of his position that the Fund portion should not have been subject to the offset provisions of Section 204(a), Claimant relies primarily upon this Court's decision in *Township of Lower Merion v. Workers' Comp. Appeal Bd. (Tansey),* 783 A.2d 878 (Pa.Cmwlth. 2001).

In *Tansey,* this Court considered the issue of "whether the Board erred in determining that any portion of a municipal police pension attributable to contributions from the Commonwealth ... should not be considered 'funded by the employer' for purposes of calculating a pension offset against workers' compensation benefits under Section 204(a)...." *Id.* at 878. We concluded that the Commonwealth's portion constituted a third-party contribution to the pension fund and, therefore, was made by an entity other than the employer directly liable for payment of compensation. Further, we rejected the employer's argument that because Section 402 of the Municipal Pension Plan Funding Standard and Recovery Act (Act 205) [6] allows a mu-

nicipality to allocate money as it sees fit between its various pension funds, the Commonwealth contribution is somehow transformed into an employer contribution for purposes of Section 204(a). Accordingly, we concluded that the Board did not err in determining that the Commonwealth-funded portion of the municipal pension fund should not be used for purposes of calculating a pension offset against workers' compensation benefits.

Applying *Tansey* to the facts of the present case, Claimant contends that the Motor License Fund is merely a pass-through because PSP has no discretion as to whether that money will be used to underwrite the troopers' pension fund. He points out that, pursuant to Section 5509(b) of the State Employees' Retirement Code, 71 Pa.C.S. § 5509(b), Employer's pension fund is singled out for special funding:

> The contributions by the Commonwealth on behalf of active members who are officers of the Pennsylvania State Police shall be charged to the General Fund and to the Motor License Fund in the same ratios as used to apportion the appropriations for salaries of members of the Pennsylvania State Police.

Further, he points out that, pursuant to Article VIII, Section 11(a) of the Pennsylvania State Constitution, the Motor License Fund is funded not from the General Fund, but from separate funding consisting of "[a]ll proceeds from gasoline and other motor fuel excise taxes, motor vehicle registration fees and license taxes, operators' license fees and other excise taxes imposed on products used in motor transportation...." That provision also provides that the monies collected shall be "used solely for construction, reconstruction, maintenance and repair of and safety

---

**6.** Act of December 18, 1984, P.L. 1005, *as*    *amended,* 53 P.S. § 895.402.

on public highways and bridges and costs and expenses incident thereto, and for the payment of obligations incurred for such purposes, and shall not be diverted by transfer or otherwise to any other purpose...." *Id.* Claimant, therefore, characterizes the Motor License Fund money as "third-party money," contending that it never becomes PSP's money because PSP acts merely as a conduit, having no ability to use that money as it sees fit.

In response, PSP maintains that, as the employer directly liable for payment of Claimant's workers' compensation benefits, it is entitled to an offset for pension benefits received by Claimant to the full extent of its contribution to the SERS, regardless of the original source of the funds which comprise its budget. Further, it contends that *Tansey* is inapposite because, in the present case, the Commonwealth is both the employer directly liable for payment of the claimant's workers' compensation benefits and the source of the employer's contributions to the pension plan. PSP contends, therefore, that regardless of the specific Commonwealth fund from which its contributions to SERS on behalf of the troopers originated, Claimant's pension plan is funded by the employer directly liable for the payment of compensation received by the claimant because all Commonwealth contributions come from the state treasury. We agree.

First, we note the identity of the entity funding the troopers' pension fund, the Commonwealth, and the entity directly liable for payment of workers' compensation benefits, the Commonwealth. In *Tansey,* we agreed with the municipal police claimant that the municipal employer was not entitled to an offset for the Commonwealth-funded portion of the pension because under the plain language of Section 204(a) of the Act, the Commonwealth was not the employer directly liable for the payment of compensation. In contrast, the Commonwealth in the present case is both the entity funding the employer's share of the pension fund and the one directly liable for paying workers' compensation benefits. It is irrelevant that the source of the money comprising the Motor License Fund is a specifically designated set of taxes and fees while the General Fund comes from other taxes and revenue sources. Both funds come from revenues collected by the Commonwealth, appropriated by the General Assembly and thereafter paid to the Commonwealth's coffers.[7]

Second, it is irrelevant that the Commonwealth has no discretion as to how it uses the Fund. In *Tansey,* we rejected the municipal employer's argument that because Act 205 allows a municipality to allocate money as it sees fit between its various pension funds, the Commonwealth's contribution somehow transformed that money into a municipal employer contribution for purposes of Section 204(a). Here, however, merely because the Fund has been legislatively earmarked for the troopers' pension fund does not negate the fact that it is made up of Commonwealth funds and the Commonwealth, which is the employer, is funding the pension.

Accordingly, we affirm.

### ORDER

AND NOW, this 28th day of July, 2010, the order of the Workers' Compensation

---

7. Section 302 of The Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. § 302, provides as follows:

 8. **General Fund.**—All moneys received by the Treasury Department from the Department of Revenue, or from any other source, which are not by this act required to be credited to any other fund, shall be credited to the General Fund.

Appeal Board in the above-captioned matter is hereby AFFIRMED.