## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank Gillen, : 
               Petitioner : 
       :
         v. : No. 1681 C.D. 2019
       : Argued: March 17, 2021
Workers' Compensation Appeal : 
Board (Pennsylvania Turnpike : 
Commission), : 
              Respondent : 

BEFORE:    HONORABLE P. KEVIN BROBSON, President Judge
                    HONORABLE RENÉE COHN JUBELIRER, Judge
                    HONORABLE MARY HANNAH LEAVITT, Judge
                    HONORABLE ANNE E. COVEY, Judge
                    HONORABLE MICHAEL H. WOJCIK, Judge
                    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                    HONORABLE J. ANDREW CROMPTON, Judge

OPINION
BY JUDGE LEAVITT                                         FILED: May 12, 2021

         Frank Gillen (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that denied his petition to review compensation benefit offset and petition for penalties filed against the Pennsylvania Turnpike Commission. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Section 204(a) of the Workers' Compensation Act (Act)[1] authorized the Turnpike Commission to take an offset against Claimant's workers' compensation benefits for his disability pension. Claimant asserts that the Board erred because Claimant's pension benefit from the State Employees' Retirement System (SERS) was funded in part by his former employer, the Delaware River Port Authority (Port Authority). For the reasons set forth below, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §71(a).

## Background

Claimant began working for the Turnpike Commission in 2008. Prior thereto, he had worked for 18 years for the Port Authority. On September 21, 2013, Claimant hit his head on metal shelving, injuring his head and cervical spine. He was awarded a weekly disability compensation benefit of $917. Thereafter, on October 3, 2016, SERS granted Claimant a disability pension in the amount of $3,206.05 per month.

On June 27, 2017, the Turnpike Commission issued a notice of workers' compensation benefit offset, stating that as of July 25, 2017, it would take a pension credit of $513.97 against Claimant's weekly disability compensation payment. The notice also stated that the Turnpike Commission would deduct an additional $50 from Claimant's weekly benefit to recover its disability compensation overpayment of $30,250.81. The Turnpike Commission explained its calculation of the offset as follows:

> Claimant's monthly $3,553.18 pension benefit funded by [the Turnpike Commission] contributions is $2,230.65 per month resulting in a $513.97 weekly [p]ension [o]ffset. From 06/09/2016 through 07/25/2017, a total of 58 6/7 weeks, you will have received [w]orkers['] [c]ompensation wage loss benefits at the rate of $917.00 per week instead of the reduced rate of $403.03 per week. As you have been overpaid in the amount of $30,250.81, an additional $50 will also be deducted in order to recoup the overpayment; resulting in a weekly rate of $353.03 through 2/27/2027.
>
> Attached are the following documents supporting the basis for this offset:
>
> [SERS's] calculation of the state share of member's max[imum] single life annuity form[.]

2

Certified Record (C.R.), Item 23 at 2.

On July 18, 2017, Claimant filed a review petition and a penalty petition. The matter was assigned to a WCJ.

At the hearing, Claimant testified that he worked for the Port Authority from 1993 to 2008 and then went to work for the Turnpike Commission in November of 2008. Claimant presented a print-out from the SERS website showing that the Port Authority was one of 104 employers that participated in SERS. Claimant argued, *inter alia*, that under Section 204(a) of the Act, the Turnpike Commission was not entitled to an offset for the SERS pension to the extent his pension was funded by the Port Authority.

The Turnpike Commission presented the testimony of Debra Murphy, SERS's director of benefit determination. Murphy testified that SERS is a defined-benefit retirement plan that covers all state employees. Benefits are determined by years of state service multiplied by a final average salary and then discounted according to certain annual accrual and class-of-service factors. At his separation from employment, Claimant's SERS pension was valued at $425,017.18. This entitled him to a disability pension of $3,553.18 per month for his lifetime.

Murphy explained that SERS keeps a record of the contributions made by each employee, but it does not record the contributions made by each participating state employer on behalf of each state employee. Claimant's contribution to his pension, including the earnings thereon, was calculated to be $158,195.55. To determine the amount funded by the Turnpike Commission, Murphy subtracted the $158,195.55 from the actuarial value of Claimant's lifetime pension, *i.e.*, $425,017.18. This left a total of $266,821.63 that was funded by the

3

Turnpike Commision. Based on that contribution, Murphy calculated the Turnpike Commission's pension offset to be $2,230.65 per month.

On cross-examination, Murphy acknowledged that the starting date she used to calculate the Turnpike Commission's contribution was June 4, 1990.[2] Murphy also acknowledged that from 1990 to November 2008, the Port Authority was responsible for the employer's contribution to Claimant's pension.

The Turnpike Commission also presented the deposition testimony of Brent Mowery, who provides actuarial services to SERS. Mowery testified that his firm sends an annual actuarial valuation to each participating SERS employer to set its "share of the funding in [a] fiscal year[.]" Notes of Testimony (N.T.), 2/13/2018, at 25; Reproduced Record at 194a (R.R. __). Specifically, SERS uses a "percentage of payroll" methodology to calculate the participating employer's contribution for a particular fiscal year. N.T. 25; R.R. 194a. Many factors determine the amount of the employer's contribution in a particular year, such as, for example, the return on SERS's investments. Nevertheless, the state employer's contribution amount is always apportioned on the basis of its payroll.

Mowery acknowledged that Claimant worked for the Port Authority between 1990 and 2008. He opined, however, that to reproduce the contribution made by a SERS participating employer for purposes of determining a pension offset would "miss the mark." N.T. 29; R.R. 198a. He explained:

> [D]efined benefit pension funding works in such a way that amounts that are required in any given year over the long timeline that these plans exist [] fluctuate[] greatly, and *what comes into play more than anything else in the ups and downs of*

---

[2] Claimant testified that he worked for the Port Authority between 1993 and 2008; however, the Turnpike Commission's witnesses testified that Claimant's employment with the Port Authority started in 1990.

*the level of required employer contribution, an aggregate, is the funded position of the plan.*

\*\*\*

*[T]he relationship of the assets on hand and the liabilities measured actuarially ...* comes into play very much in the actuarial determination of how much funding should happen each year.... That money is not the precise actuarial amount required to cover the value of additional accrued benefit [that is] occurring in that one year for all the active participants under that employer during that year. [It is] generally going to be higher or lower than the precise actuarial amount needed.

N.T. 30-31; R.R. 199a-200a (emphasis added). Stated otherwise, the contribution by the participating employer fluctuates depending upon the liabilities and assets of the SERS fund.

Mowery opined that the contributions made by a single SERS participating employer during an employee's career do not reflect the amount of pension funded by that participating employer. Rather, the pension obligations of SERS are funded by all participating employers at all times. Mowery did not know the amount of contributions that had been made by the Port Authority to SERS during the time Claimant was on the Port Authority's payroll.

### WCJ's Decision and Board's Adjudication

The WCJ denied Claimant's review petition and held that the Turnpike Commission was entitled to an offset credit and recoupment of its overpayment, as set forth in its notice of workers' compensation benefit offset. Crediting all witnesses' testimony, the WCJ found that Claimant's 18-year employment with the Port Authority was "irrelevant in [the Turnpike Commission's] actuarial analysis" because "all participating employers contribute an apportioned amount to fund the pension of all SERS retirees regardless of which employers they worked for." WCJ

5

Decision, 8/14/2018, at 10; R.R. 287a. The WCJ opined that our Supreme Court has expressly approved the actuarial analysis used by SERS in *Department of Public Welfare v. Workers' Compensation Appeal Board (Harvey)*, 993 A.2d 270 (Pa. 2010). The WCJ denied the penalty petition because Claimant did not establish that the Turnpike Commission violated the Act by taking an offset credit for Claimant's disability pension benefits from SERS.

Claimant appealed to the Board, and it affirmed the WCJ's decision. Relying on *Harvey*, 993 A.2d 270, the Board held that Section 204(a) of the Act did not require the Turnpike Commission to prove the exact amount of its contribution to Claimant's pension to qualify for an offset. Rather, the exact amount of Claimant's contribution plus earnings thereon was a known quantity, and the remaining contribution is appropriately treated as the Turnpike Commission's contribution. The Board affirmed the WCJ's decision that the Turnpike Commission was entitled to a retroactive credit and recoupment of the overpayment.

Claimant has petitioned for this Court's review of the Board's adjudication.[3]

**Appeal**

On appeal, Claimant raises two issues for our consideration. First, Claimant argues that the Board erred because Section 204(a) of the Act does not entitle a state employer to take a credit for the contributions to SERS made by another state employer. Second, Claimant argues that the Board erred in denying his penalty petition because the Turnpike Commission violated the Act by taking a

---

[3] "Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated." *United Airlines v. Workers' Compensation Appeal Board (Gane)*, 42 A.3d 379, 382 n.5 (Pa. Cmwlth. 2012).

6

credit for a pension benefit funded in large part by the Port Authority. Claimant requests this Court to remand the matter for a determination of the correct amount of offset to which the Turnpike Commission is entitled and to award a penalty against it.[4]

## Analysis

In his first issue, Claimant argues that the Board ignored the plain terms of Section 204(a) of the Act, which limits an employer's offset for pension benefits "to the extent" it has funded the pension. 77 P.S. §71(a). The WCJ found that Claimant worked for the Port Authority for 18 years and worked for the Turnpike Commission for 5 years. Nevertheless, the Board allowed the Turnpike Commission to claim that "it funded 23 years of pension matches to the SERS program on [] Claimant's behalf[.]" Claimant Brief at 15. The Turnpike Commission counters that the Board did not err because it followed the appropriate methodology for calculating a state employer's credit against workers' compensation benefits for a SERS pension.

We begin with a review of the relevant law. Section 204(a) of the Act states, in pertinent part, as follows:

> The severance benefits paid by the employer directly liable for the payment of compensation and *the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation* which are received by an employee *shall also be credited against the amount of the award* made under sections 108 [(occupational disease)] and 306 [(total and partial disability)], except for benefits payable under section 306(c) [(specific loss benefits)]….

---

[4] Claimant does not challenge the Board's adjudication to the extent it affirmed the WCJ's decision that the Turnpike Commission was entitled to a retroactive credit and some amount of recoupment.

7

77 P.S. §71(a) (emphasis added). An employer bears the burden of demonstrating the "extent" to which it has funded an employee-claimant's pension. *Pennsylvania State University v. Workers' Compensation Appeal Board (Hensal)*, 911 A.2d 225, 231 (Pa. Cmwlth. 2006).

SERS provides a defined-benefit pension plan for which the "benefit level is established at the commencement of the plan and actuarial calculations determine the varying contributions necessary to fund the benefit at an employe's retirement." 34 Pa. Code §123.2. SERS's defined-benefit plan guarantees a fixed monthly benefit to each retiree member for life, without regard to whether the accumulated contributions and earnings in the member's account will prove sufficient to cover those lifetime payments. By contrast, a "defined-contribution plan" is one which

> provides for an individual account for each participant and for *benefits based solely upon the amount of accumulated contributions and earnings in the participant's account*. At the time of retirement the accumulated contributions and earnings determine the amount of the participant's benefit either in the form of a lump-sum distribution or annuity.

34 Pa. Code §123.2 (emphasis added).

In *Hensal*, 911 A.2d 225, this Court addressed the extent to which a Commonwealth employer can take a credit against workers' compensation disability benefits under Section 204(a) of the Act for a disability pension from SERS. The employer presented the testimony of SERS's director of benefit determination and its actuary. SERS calculated the employer's offset by subtracting "from the total value of the [claimant's] actuarially determined projected lifetime benefit the specific amount the [claimant] contributed, plus an actuarially determined investment rate of return." *Hensal*, 911 A.2d at 229. The WCJ held that the evidence

8

was insufficient to establish the extent of the employer's pension contributions for purposes of Section 204(a) of the Act, and the Board affirmed.

On appeal, this Court reversed the Board's holding. We concluded that the employer's evidence was sufficient to calculate the offset for a defined benefit pension, which provides "an employee with a set benefit amount based on factors known only at retirement, such as length of employment and retirement age … and final average salary." *Hensal*, 911 A.2d at 231 (citation omitted). Defined-benefit plans require employers to contribute an amount to "cover the difference" between "employee contributions and the collective pension [fund] liability" and, thus, the *employer's liability to make contributions to a defined-benefit pension "is not complete until the employee dies*." *Id*. (emphasis added). In short, employers assume "the risks of investment, inadequate funding, and member longevity." *Id*. Noting that Section 204(a) of the Act does not require proof of the precise contributions by the employer, we concluded that "[s]ince an employer cannot provide evidence of actual contributions for the use of an individual member of a defined benefit pension plan, it may meet its burden of proof … with expert actuarial testimony." *Hensal*, 911 A.2d at 232.

In *Harvey*, 993 A.2d 270, our Supreme Court concluded that this above-described methodology constituted a valid way to quantify the employer's contribution to SERS for purposes of determining the employer's offset under Section 204(a) of the Act. The Supreme Court held that actuarial evidence is appropriate "to establish the extent of an employer's funding for offset/credit purposes." *Harvey*, 993 A.2d at 282 (quoting *City of Philadelphia v. Workers' Compensation Appeal Board (Grevy)*, 968 A.2d 830, 839 (Pa. Cmwlth. 2009)).

9

Here, Claimant does not challenge the actuarial methodology used to determine the amount of the state employer's contribution to his pension. Claimant argues, rather, that the Turnpike Commission is not entitled to a credit for the part of the pension Claimant earned while working for another state employer. Unlike the claimant in either *Harvey* or *Hensal*, Claimant worked for the Port Authority for 18 years, which made payments to SERS on Claimant's behalf before he went to work for the Turnpike Commission. Relying upon this Court's decision in *Pittsburgh Board of Education v. Workers' Compensation Appeal Board (Dancho)*, 834 A.2d 1242 (Pa. Cmwlth. 2003), Claimant contends that the Turnpike Commission cannot claim an offset for contributions made by the Port Authority.

In *Dancho*, the claimant, an employee of the Pittsburgh Board of Education, collected workers' compensation benefits and a disability pension from the Public School Employees' Retirement System (PSERS). The pension was funded by equal contributions made by the Pittsburgh Board of Education and by the Commonwealth. The Board of Education claimed a credit for the pension benefits paid to the claimant from PSERS. The WCJ granted the employer the credit and concluded that "the school district and the Commonwealth were the 'employer' for purposes of Section 204(a) [of the Act]." *Dancho*, 834 A.2d at 1244. On appeal, the Board reversed, holding that the Commonwealth was not the "employer" within the meaning of Section 204(a) of the Act. The Board of Education was entitled to a credit only to the extent that it contributed to the pension, which did not include the Commonwealth's contributions.

On further appeal, this Court affirmed. We rejected the Board of Education's argument that because it was created to carry out the Commonwealth's commitment to education, both it and the Commonwealth constituted the

10

"employer" for purposes of Section 204(a) of the Act. We held that the Commonwealth was not the "employer" within the meaning of Section 204(a) because, "[i]f that were so, the Commonwealth would be obligated for the underlying workers' compensation claim, which it is not." *Dancho*, 834 A.2d at 1245. As such, the Board of Education was not entitled to an offset for the Commonwealth-funded portion of the pension.

*Dancho* does not advance Claimant's argument that the Turnpike Commission is not entitled to an offset for the contributions made to SERS on Claimant's behalf by the Port Authority. A school district is a creature of the state, but it is not the state. It is a separate legal person. In *Dancho*, the Commonwealth's payment to PSERS constituted a third-party subsidy to "the employer directly liable for the payment of compensation" for purposes of Section 204(a) of the Act, 77 P.S. §71(a). By contrast, here, Claimant moved his employment from one Commonwealth agency to another.[5] No matter which Commonwealth agency or instrumentality made payments to SERS on behalf of Claimant, each did so in its capacity as Claimant's employer.

This is consistent with the definition of "state employee" in Section 5102 of the State Employees' Retirement Code (Retirement Code). 71 Pa. C.S. §5102. It states, in relevant part, that a state employee is:

> [a]ny person holding a State office or position under the
> Commonwealth, employed by the State Government of the
> Commonwealth, in any capacity whatsoever, except an
> independent contractor or any person compensated on a fee basis

---

[5] The Port Authority is an "instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey" created via a joint compact memorialized via statute at Article I of the Act of June 12, 1931, P.L. 575, *as amended*, 36 P.S. §3503. Likewise, the Turnpike Commission is "an instrumentality of the Commonwealth." Section 4 the Pennsylvania Turnpike Commission Act, Act of May 21, 1937, P.L. 774, *as amended*, 36 P.S. §652d.

11

> or any person paid directly by an entity other than a State Employees' Retirement System employer, and *shall include members of the General Assembly, and any officer or employee of the following*:
>
> &#42;&#42;&#42;
>
> (2) *The Pennsylvania Turnpike Commission, the Delaware River Port Authority*….

71 Pa. C.S. §5102 (emphasis added). Claimant was, at all relevant times, "employed by the state government of the Commonwealth." *Id*.

This Court's holding in *Gaughan v. Workers' Compensation Appeal Board (Pennsylvania State Police)*, 2 A.3d 785 (Pa. Cmwlth. 2010), is also instructive. There, the claimant, a retired state police trooper, appealed the Board's denial of his petition to review benefit offset. The claimant collected total disability benefits for his work-related injury and a disability pension from SERS, based on his 25 years of employment with the Pennsylvania State Police. Part of the State Police contribution to SERS was funded by the Motor License Fund, itself created by motor fuel excise taxes, motor vehicle registration fees and license taxes. The claimant contended that the Motor License Fund was "third-party money" and should not be considered funded by the employer for purposes of calculating the offset under Section 204(a) of the Act. *Gaughan*, 2 A.3d at 789. In support, the claimant cited *Township of Lower Merion v. Workers' Compensation Appeal Board (Tansey)*, 783 A.2d 878 (Pa. Cmwlth. 2001), which involved a municipal employer's right of offset under Section 204(a) of the Act. There, as in *Dancho*, this Court held that only the contributions of the municipal employer, not those of the Commonwealth, should be used to calculate employer's offset.

12

This Court rejected the claimant's argument in *Gaughan*. We held that the Commonwealth funded the State Police contribution to SERS and funded the claimant's workers' compensation benefits. As an instrumentality of the Commonwealth, the State Police was entitled to an offset credit for the claimant's pension from SERS. We distinguished *Tansey*, on the basis that

> the Commonwealth was not the employer directly liable for the payment of compensation. In contrast, the Commonwealth in the present case is both the entity funding the employer's share of the pension fund and the one directly liable for paying workers' compensation benefits.

*Gaughan*, 2 A.3d at 789. We further held it irrelevant that some of the State Police funding came from the Motor License Fund, as opposed to the General Fund. "Both funds come from revenues collected by the Commonwealth, appropriated by the General Assembly and thereafter paid to the Commonwealth's coffers." *Id*.

Consistent with *Gaughan*, we conclude that the Commonwealth is Claimant's "employer" and entitled to an offset against its payment of workers' compensation disability benefits to Claimant under Section 204(a) of the Act. SERS administers the defined-benefit pension plan for state employees, who take their service credit and contributions with them when they move their employment from one Commonwealth agency to another, or from one branch of state government to another. *See* 71 Pa. C.S. §5302. The Commonwealth is a single entity that has organized itself into agencies and instrumentalities to perform specific functions.[6] However, it is the Commonwealth, and its taxpayers, that stand behind SERS. *See*

---

[6] *See generally Lyness v. State Board of Medicine*, 605 A.2d 1204, 1209 (Pa. 1992), in which the Supreme Court, in explaining that a single administrative agency can perform the function of prosecution and the function of adjudication, noted that "each administrative board and judge is ultimately a subdivision of a single entity, the Commonwealth of Pennsylvania[.]"

Section 5509 of the Retirement Code, 71 Pa. C.S. §5509 ("The General Assembly shall make an appropriation sufficient to provide for the separate obligations of the Commonwealth to the fund and the trust."). This is true regardless of the number of state agencies involved in creating, over the years, the lifetime pension of an individual state employee. Indeed, Section 5507(a) of the Retirement Code provides that "[t]he Commonwealth ... shall make contributions to the fund on behalf of all active members." 71 Pa. C.S. §5507(a).[7]

The Board did not err in denying Claimant's review petition. The Commonwealth, in its capacity as employer, funds every state employee's pension and every state employee's workers' compensation benefits. *Gaughan*, 2 A.3d at

---

[7] It states:

> (a) Contributions on behalf of active members.--*The Commonwealth* and other employers whose employees are members of the system *shall make contributions to the fund on behalf of all active members in such amounts as shall be certified by the board as necessary to provide*, together with the members' total accumulated deductions, annuity reserves on account of prospective annuities other than those provided in sections 5708 (relating to supplemental annuities), 5708.1 (relating to additional supplemental annuities), 5708.2 (relating to further additional supplemental annuities), 5708.3 (relating to supplemental annuities commencing 1994), 5708.4 (relating to special supplemental postretirement adjustment), 5708.5 (relating to supplemental annuities commencing 1998), 5708.6 (relating to supplemental annuities commencing 2002), 5708.7 (relating to supplemental annuities commencing 2003) and 5708.8 (relating to special supplemental postretirement adjustment of 2002), in accordance with the actuarial cost method provided in section 5508(a), (b), (c), (d) and (f) (relating to actuarial cost method).

71 Pa. C.S. §5507(a) (emphasis added). "Active members" is defined as:

> A State employee, or a member on leave without pay, for whom pickup contributions are being made to the fund or for whom such contributions otherwise required for current State service are not being made solely by reason of section 5502.1 (relating to waiver of regular member contributions and Social Security integration member contributions) or any provision of this part relating to the limitations under section 401(a)(17) or 415 of the Internal Revenue Code of 1986 (Public Law 99-514, 26 U.S.C. § 401(a)(17) or 415).

71 Pa. C.S. §5102.

14

789. We hold that the Turnpike Commission, as Claimant's Commonwealth employer, is entitled to an offset for Claimant's pension benefits from SERS, which is the amount set forth in the notice of workers' compensation benefit offset.

### Conclusion

For these reasons, we affirm the Board's denial of Claimant's petition to review compensation benefit offset. Because we conclude that the Turnpike Commission did not violate Section 204(a) of the Act by taking an offset for disability pension benefits, we also affirm the Board's denial of Claimant's penalty petition.

_____
MARY HANNAH LEAVITT, President Judge Emerita

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank Gillen,                     :
          Petitioner       :
                      :
          v.                :   No. 1681 C.D. 2019
                      :
Workers' Compensation Appeal   :
Board (Pennsylvania Turnpike   :
Commission),                :
          Respondent    :

# **O R D E R**

AND NOW, this 12th day of May, 2021, the adjudication of the Workers' Compensation Appeal Board in the above-captioned matter, dated October 29, 2019, is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita