IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: 2005 H&H Car Trailer :
Vin 4J6UF18255B076580 :
 : No. 740 C.D. 2024
Appeal of: Christopher Moore : Argued: September 9, 2025

BEFORE: HONORABLE ANNE E. COVEY, Judge
   HONORABLE CHRISTINE FIZZANO CANNON, Judge
   HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE FIZZANO CANNON    FILED: October 1, 2025

  Christopher Moore (Moore) appeals from the May 6, 2024, order of the Court of Common Pleas of Adams County (trial court). The trial court determined that the evidence did not support Moore's ownership of a trailer seized from his neighbor's property by the Borough of Abbottstown (Borough). Accordingly, the trial court confiscated the trailer and directed the Borough to sell it and direct any remaining proceeds to the Pennsylvania Treasury after paying the trial court costs in this matter. Upon review, we affirm.

## I. Factual and Procedural Background

  On October 18, 2023, the Borough filed a petition with the trial court seeking to determine ownership of a trailer seized on a property adjacent to 312 Sutton Road in the Borough, which is owned by Moore's mother and where Moore lives (the Moore Property). Reproduced Record (R.R.) at 40a-42a. The petition explained that as part of an "investigation of an accumulation of junk, motor vehicles and parts of motor vehicles on the [Moore Property], the Borough also identified other junk and a car trailer" on an adjacent property owned by J.A. Myers (the Myers Property), which appeared to be in violation of a "No Trespass Notice" issued by

Myers to Moore. *Id*. at 40a-41a. After confirming with Myers that he did not own the trailer on his property, the Borough averred that it obtained a search warrant and subsequently seized the trailer, which was towed to the Borough's impound lot. *Id*. at 42a. The trailer had no vehicle identification number (VIN) plate, inspection, or registration. *Id*. The Borough cited Section 7105 of the Motor Vehicle Code,[1] which states that a vehicle may be seized by police if its VIN has been removed or falsified and that "[i]f ownership of the vehicle is not established to the satisfaction of the court, the vehicle shall be confiscated by the court and sold immediately," with the proceeds "used to pay the costs of proceedings and the balance, if any, shall be forwarded to the [Department of Transportation (DOT)] to be transmitted to the State Treasurer for deposit in the Motor License Fund."[2, 3] 75 Pa.C.S. § 7105(a), (c).

The Borough's petition asserted that Moore had claimed ownership of the trailer but did not provide proof of ownership "despite numerous requests" or file a petition to establish his entitlement to the trailer as advised by the Borough. *Id*. at 42. The Borough asserted that because Moore failed to act, it filed the petition so that it could legally dispose of the trailer. *Id*. The petition asked the trial court to issue a rule to show cause for Moore and Robert Baker (Baker), a Wyoming resident whom the Borough had determined to be the current titleholder of the trailer, to demonstrate entitlement to the trailer. *Id*. The petition also asked that "if no

---

[1] 75 Pa.C.S. §§ 101-9805.

[2] Section 7101 of the Vehicle Code states that every vehicle "shall contain a vehicle identification number which shall be placed upon or incorporated into the vehicle in such manner as to be a permanent part of the vehicle." 75 Pa.C.S. § 7101.

[3] The Motor License Fund is used for the construction, maintenance, and repair of Pennsylvania's state highways and bridges. *See Gaughan v. Workers' Comp. Appeal Bd. (Pa. State Police)*, 2 A.3d 785, 788-89 (Pa. Cmwlth. 2010).

sufficient cause" was shown for ownership, the trial court "direct that the vehicle be sold and the proceeds used to pay" the Borough's storage costs and the court costs of the proceeding, with any remaining balance to be sent to the Treasurer for deposit into the Motor License Fund. *Id*. The Borough served the petition on Moore and Baker. *Id*. at 45.

On October 19, 2023, the trial court issued an order stating that "a Rule is issued upon [Moore and Baker] to show cause why the [Borough] is not entitled to the relief requested." R.R. at 46a. Moore answered the Borough's petition and claimed ownership of the trailer. *Id*. at 48a-52a. Baker acknowledged service but did not participate further in the case. *Id*. at 58a.

At the May 2024 hearing, the Borough's police chief and code enforcement officer, James Robert Graham (Chief Graham), testified. He stated that the Moore Property had various code and zoning violations in January 2023, including junk vehicles and buildings that had been put up without permits. R.R. at 10a. He learned that some of the Moores' movable property was on the neighboring Myers Property and obtained consent to enter that property and investigate. *Id.* There, Chief Graham saw a black car trailer that Myers's superintendent stated was not Myers's property. *Id*. When Chief Graham inspected the trailer, it did not have a license plate, inspection certificate, or VIN plate; it had a sticker that had once indicated the VIN, but the printing had been "worn down" and "scraped up" and the VIN was not readable. *Id*. at 11a & 19a. Officer Graham noted that Section 7105, which is often associated with "chop shop" and stolen vehicle issues, requires police officers to seize such vehicles.[4] *Id*. at 12a. He obtained a warrant, and on January

---

[4] There is no dispute that the trailer is a "vehicle" as defined in Section 102 of the Motor Vehicle Code: "Every device in, upon or by which any person or property is or may be transported or drawn upon a highway, except devices used exclusively upon rails or tracks." 75 Pa.C.S. § 102.

3

30, 2023, he returned to the property and towed the trailer to a secure lot in the Borough, where it remained through the date of the hearing. *Id*. at 12a-13a.

Chief Graham learned that the trailer had a manufacturers' identification number that the manufacturer could associate with the VIN assigned to the trailer when it was made; once he obtained the original VIN, he traced it to Baker in Wyoming, who was the current titleholder. R.R. at 14a. Chief Graham contacted Baker, who told him that he sold the trailer through Craigslist in 2008 or 2009. *Id*. at 15a. Baker did not remember the buyer but did not think the name was Moore. *Id*. Officer Graham could not trace the vehicle further and could not eliminate the possibility that it had been stolen at some point after Baker sold it because the national registry delists reports of stolen vehicles after five years, which meant that if the trailer had been reported stolen after Baker sold it in 2008 or 2009, that listing had lapsed by 2023. *Id*.

Chief Graham was aware that Moore claimed ownership of the trailer but stated that he could not give it to Moore without a court order and a valid replacement VIN plate issued by the DOT. R.R. at 15a. Moore had been advised that he could file a petition to recover the trailer, but he had not done so, which led to the Borough filing its petition to resolve the matter. *Id*. at 16a. Chief Graham acknowledged that Moore was the only individual to claim ownership of the trailer but stated that Baker would have to formally transfer the title to Moore, who could then apply for a Pennsylvania title and replacement VIN. *Id*. at 18a & 21a.

Moore testified that he attended college in Wyoming from 2007 to 2009 and bought a Jeep there. R.R. at 24a. When he was coming back to Pennsylvania, he needed a trailer to bring back the Jeep. *Id*. He bought one for about $5,000 from an individual he now believes was Baker, although he did not initially remember the

4

name. *Id*. at 25a. Moore stated that Baker told him all he needed was the registration because Wyoming is a "no title" state.[5] *Id*. When Moore returned to Pennsylvania, he parked the trailer in his yard; he never got it inspected or transferred to Pennsylvania and did not use it again except to store some building materials. *Id*. at 25a-27a. He stated that because he was not using the trailer on the road, he "wasn't too concerned" about replacing the VIN plate after the sticker faded. *Id*. at 27a & 31a. As of the hearing date, the Wyoming license plate had rotted off, broken, or gotten lost, and Moore no longer had any paperwork for the trailer. *Id*. When he learned that the Borough was addressing code violations on his property, he moved the trailer onto the neighboring Myers Property, where Chief Graham found it. *Id*. at 28a.

Moore stated that once the trailer had been seized by the Borough, he ordered a replacement VIN plate online from Amazon; however, he did not bring the plate to the hearing.[6] R.R. at 7a & 28a. He learned that there was a petition process to get a court order establishing his ownership of the trailer, but he did not file such a petition because he no longer had any paperwork for the trailer, he no longer possessed it to get it inspected, and it was still registered in Wyoming. *Id*. at 29a-32a. He has been unable to contact Baker to get the title transferred. *Id*. at 30a.

---

[5] This alleged representation appears at odds with the fact that Chief Graham was able to trace the title to Baker through the VIN because Baker was the current record title holder of the trailer. R.R. at 14a. However, the Wyoming Department of Transportation's website does indicate that light trailers purchased before 2010 are not required to be titled. *See* https://dot. state.wy.us/files/live/sites/wydot/files/shared/Compliance_and_Investigation/2010 Light Trailer-Snowmobile-Boat Title procedures.pdf (last visited September 30, 2025) (citing W.S. 31-2-101).

[6] According to the trial court, Moore had been advised through his counsel in two pre-hearing conference calls to obtain and bring a replacement VIN plate to the hearing. R.R. at 7a.

The trial court's May 6, 2024, order stated that the evidence did not support Moore's claim to ownership of the trailer. R.R. at 1a. The trailer was ordered to be sold with the proceeds first going to cover the costs of the court proceedings and any remainder going to the state treasury. *Id*. On Moore's appeal, the trial court issued a July 31, 2024, opinion in support of its order; accordingly, this matter is ripe for resolution.

## II. Issues on Appeal[7]

Moore asserts that the trial court improperly shifted the burden of proof to require him to prove ownership of the trailer when the burden should have been on the Borough as the petitioner. Moore's Br. at 9. Moore also asserts that, aside from the burden of proof, the trial court erred in concluding that he failed to provide sufficient evidence to support his ownership of the trailer. *Id*.

## III. Discussion

### A. Burden of Proof

Section 7105 of the Motor Vehicle Code provides, in relevant part:

> **(a) Duty of police.**--Every police officer having knowledge of a vehicle on which the [VIN] has been removed or falsified shall immediately seize and take possession of the vehicle. . . .
>
> **(b) Proceedings if owner known.**--The court, upon petition of the owner or of the person entitled to possession of a seized vehicle, may relinquish custody of the vehicle to the person legally entitled to the vehicle. Any vehicle

---

[7] Our review is limited to determining whether the trial court's findings of fact are supported by substantial competent evidence and whether the trial court made an error of law or committed an abuse of discretion. *Habbyshaw v. Dep't of Transp., Bureau of Driver Licensing*, 683 A.2d 1281, 1282 n.1 (Pa. Cmwlth. 1996).

in the possession or custody of a police officer shall not be released to the owner or person legally entitled to possession of a seized vehicle pursuant to this section until such time as a replacement [VIN] plate has been obtained. Proof of the replacement [VIN] must be exhibited to the police officer at the time of release, together with the court order relinquishing custody. . . .

**(c) Proceedings if owner unknown.**--If ownership of the vehicle is not established to the satisfaction of the court, the vehicle shall be confiscated by the court and sold immediately, and the proceeds shall be used to pay the costs of proceedings and the balance, if any, shall be forwarded to the department to be transmitted to the State Treasurer for deposit in the Motor License Fund.

75 Pa.C.S. § 7105. As Chief Graham observed, this statute is generally associated with the criminal prosecution of vehicle theft and "chop shop" enterprises. *See Commonwealth v. Hudak*, 710 A.2d 1213 (Pa. Super. 1998) (relating to criminal charges concerning vehicles originally seized pursuant to Section 7105(a)).[8] However, it is also applied in association with abandoned vehicles. *See Crawford's Auto Ctr., Inc. v. Pa. State Police*, 655 A.2d 1064, 1069 n.9 (Pa. Cmwlth. 1995) (explaining that, "with regard to both abandoned vehicles and those with removed or falsified [VINs], the Vehicle Code provides that excess proceeds from a sale eventually be deposited in the Motor License Fund").

There is a dearth of cases addressing Section 7105 and the applicable burden of proof. In *Petition of Allstate Insurance Company*, 433 A.2d 91 (Pa. Super. 1981), the Superior Court noted that Section 7105 "does not specify the evidentiary burden which a petitioner seeking the return of a vehicle with falsified identification numbers must meet, and no Pennsylvania appellate court has decided this issue." *Id*.

---

[8] While Superior Court decisions are not binding on this Court, they offer persuasive precedent where they address analogous issues. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

at 92. The Superior Court analogized to civil forfeiture proceedings where "the owner or any third party seeking to reclaim a vehicle must prove, *inter alia*, his interest in the vehicle and lack of culpability by a preponderance of the evidence." *Id*. at 92-93. The Superior Court's observation is persuasive, given that "[t]he preponderance of the evidence test is the normal burden of proof in most civil proceedings. . . . Indeed, the term 'burden of proof,' standing alone, implicitly means 'by the preponderance of the evidence.'" *In re Navarra*, 185 A.3d 342, 354 (Pa. Super. 2018) (citing *Tincher v. Omega Flex*, 104 A.3d 328, 408 (Pa. 2014)).

Here, the trial court, citing *Allstate*, concluded that the proper burden of proof for a petitioner seeking return of a vehicle was by a preponderance of the evidence and that Moore, seeking return of the trailer, bore that burden. R.R. at 85a.

Moore appears to argue, however, that the Borough should have borne a clear and convincing burden of proof because it sought to deprive him of his property as in civil forfeiture matters. Moore's Br. at 11. He emphasizes that he has not been accused of any criminal activity and was not the petitioner here, which makes the Borough's need to disprove his ownership claims by clear and convincing evidence even more stringent than in the civil forfeiture context. *Id*. at 13-15.

The Borough responds that Moore's analogy to civil forfeiture is overstated and inapposite because the goal of Section 7105 is not to take an individual's property, but to determine the rightful owner of a vehicle lacking a VIN so that the vehicle may be returned to that individual. Borough's Br. at 8-9. To the extent "forfeiture" occurs, it is only after a judicial determination that ownership of the vehicle has not been established. *Id*. at 9. The Borough contends that the trial court correctly applied Section 7105 based on the actual goals of the parties: the Borough had to establish that it lawfully seized the trailer because it lacked a VIN,

which is not in dispute, and Moore participated in the court proceedings because he sought the return of the trailer. *Id*. at 12-13. The Borough maintains that it bore no burden of proof on the question of ownership, even though it was the formal petitioner here, because its aim was solely to bring the matter into the judicial forum so the trailer could be returned to a lawful owner or be sold and, either way, no longer the Borough's responsibility. *Id*. at 13-14. The Borough takes no position on who should ultimately get the trailer. *Id*. at 9a & 16a.

We note the trial court's conclusion and the parties' arguments and recognize that in many if not most Section 7105 cases, the "petitioner" will be the owner seeking return of the vehicle; in that context, a preponderance burden on the petitioner is appropriate. *See Allstate*, 433 A.2d at 93. Here, however, Moore was advised of his ability to petition for ownership of the trailer but did not do so. The Borough, having no interest in the trailer and seeking only to dispose of it legally, had no choice but to ask the trial court to issue a rule to show cause for Moore (or Baker) to establish ownership and, if that could not be done, to direct the sale of the trailer. R.R. at 42a. The trial court granted that request in its October 19, 2023, order, and set the matter for a hearing. *Id*. at 46a. This formal mechanism did not turn the Borough into a petitioner seeking to prove ownership or a government seeking to take Moore's property.[9]

---

[9] Moore's argument would turn Section 7105 into something it is not: a replica of civil forfeiture, a specific and rigorous scheme tied closely to criminal activity in which the property at issue, although legitimately owned, is an "instrumentality." *Commonwealth v. 1997 Chevrolet*, 160 A.3d 153, 185 (Pa. 2017) (regarding a vehicle used in drug sales). It is punitive and subject to the protections of the Excessive Fines Clause of the Eighth Amendment to the United States Constitution, U.S. CONST. amend. VIII. *Id*. at 178. Any proceeds go to the local law enforcement agencies, which incentivizes those entities. *Id*. at 178 n.19. Given these particularities, placing the heightened clear and convincing burden of proof upon the government is proper in civil forfeiture.

Pennsylvania Rule of Civil Procedure 206.6 provides for issuance of a rule to show cause as of course upon the filing of a petition. Pa.R.Civ.P. 206.6. The adverse party must show why the action sought by the petitioner should not be taken. *Petition of Tax Claim Bureau of Westmoreland Cnty.*, 613 A.2d 634, 638 (Pa. Cmwlth. 1992). As such, once the Borough requested the rule to show cause and the trial court issued its order, Moore bore the burden of proof as the adverse party to show that the trailer should not be sold, which in essence required him to prove his ownership of it by a preponderance of the evidence and in accordance with Section 7105. *See In re Navarra*, 185 A.3d at 354. Given the procedural posture of this matter, the court did not improperly shift the burden onto Moore or commit legal error in its application of Section 7105.

## B. Sufficiency of Evidence

Generally, the trial court, as factfinder, is free to believe all, part, or none of the evidence, to make all credibility determinations, and to resolve all conflicts in the evidence. *Laurel Rd. Homeowners Ass'n, Inc. v. Freas*, 191 A.3d 938, 952 (Pa. Cmwlth. 2018). This Court, accordingly, cannot upset the trial court's credibility determinations or reweigh the evidence to reach a finding contrary to that

---

Section 7105 does not resemble civil forfeiture closely enough that a clear and convincing burden of proof on the government is warranted. It has criminal components arising from the need to police stolen vehicles but is not itself punitive in nature because its plain language aim is to determine the rightful owner of a potentially stolen vehicle and return the vehicle to that person. 75 Pa.C.S. § 7105(b) (stating that "the court, upon petition of the owner or of the person entitled to possession of a seized vehicle, may relinquish custody of the vehicle to the person legally entitled to the vehicle"). If ownership cannot be established and the vehicle is sold, the proceeds do not go to the locality, but to the statewide Motor License Fund, which is used for the construction, maintenance, and repair of Pennsylvania's state highways and bridges. *See Gaughan*, 2 A.3d at 788-89.

of the trial court. *Id*. Inconsistencies in the evidence go to the weight of the evidence, and we will respect a trial court's findings as to the credibility and weight of the evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious, or flagrantly contrary to the evidence. *Id*.

Here, the trial court reviewed the evidence and concluded that it did not support Moore's ownership claim to the trailer which, at the time of seizure, had been "abandoned" on the adjoining Myers Property. R.R. at 86a. The trial court noted Moore's admitted failure to secure a VIN for the trailer before it was seized or to petition for the trailer during the nine months after it was seized, leaving the Borough no recourse but to file its own petition to resolve the matter. *Id*. at 87a-89a. The trial court cited *Commonwealth v. Yorkgitis*, 466 A.2d 185 (Pa. Super. 1983), where the petitioner's evidence, a bill of sale for a vehicle chassis that lacked a VIN and the petitioner's testimony that he had applied for and received a replacement VIN plate from the DOT, failed to establish ownership. *Id*. at 88a. Here, with Moore presenting no documentation at all, the trial court concluded that his evidence was not credible and "at best, unclear and indefinite." *Id*. at 89a.

Moore argues that the trial court erred because his evidence of lawful ownership of the trailer was uncontradicted. Moore's Br. at 15. He acknowledges that the trailer did not have a VIN and that he had no paperwork for it but maintains that there was no indication or evidence that he stole it. *Id*. He adds that the trial court wrongly emphasized his failure to procure a replacement VIN plate from the DOT by the date of the hearing and insists that replacing the VIN plate was a "technicality" that was practically impossible for him to satisfy once the trailer had been seized by the Borough because he could not have it inspected. *Id*. at 18. He

11

asserts that the trial court should have declared him the owner and provided an order that he could then use to obtain a proper replacement VIN and asks this Court to reverse and remand for that purpose. *Id*. at 19-20. The Borough responds that Moore's testimony was not uncontradicted and that the trial court properly considered the evidence as a whole before concluding that no ownership of the trailer had been established. Borough's Br. at 14-17.

Upon review of the record, we agree with the Borough and the trial court. Chief Graham found the trailer on the adjoining Myers Property, where he was told that the trailer did not belong to Myers. R.R. at 10a. The trailer did not have indicia of ownership such as a license plate, inspection certificate, or VIN plate; a sticker on the trailer that once indicated its VIN was unreadable. *Id*. at 11a & 19a. Once Chief Graham located the manufacturer's identification number and tracked down the original VIN, he learned that the trailer was still titled to Baker in Wyoming, who had sold the vehicle in 2008 or 2009 but did not remember Moore's name as the buyer. *Id*. at 15a. Chief Graham could not identify an owner through the stolen vehicle registry, which does not keep reports longer than five years. *Id*.

Moore's testimony that he bought the vehicle in Wyoming in 2009 corresponded with Baker's report to Chief Graham. R.R. at 24a. Moore admittedly did not get a title from Baker and, based on Baker's apparent assurance that Wyoming was a "no title" state that allowed cars to be sold without requiring title transfer, he did not try to get one from Wyoming authorities before leaving that state. *Id*. at 25a. He did not try to get a Pennsylvania title or replace the VIN when he returned because he was not using it on the roads. *Id*. at 25a-27a. When he learned that the Borough was concerned about code issues on his property, including junk vehicles, he did not seek to rectify the situation but simply moved the trailer onto the

12

neighboring Myers Property. *Id*. at 28a. After the trailer was taken by the Borough, he did not petition for its return. *Id*. at 29a-32a. He did not try to go through the DOT and, instead, averred that he got a replacement VIN plate from Amazon, which he did not bring to the hearing despite being instructed to do so. *Id*. at 7a & 28a.

Moore is correct that he is the only one claiming ownership of the trailer. However, he admittedly took no practical steps either before or after it was taken to document his ownership or reclaim it other than what the trial court describes as "half-hearted attempts to purchase a VIN plate online and not through [DOT] as required by Section 7104." R.R. at 89a. Moore's evidence, limited to his testimony, is even thinner than the insufficient documentary evidence in *Yorkgitis*. *See* 466 A.2d at 187. As such, the record evidence supports the trial court's determination that Moore did not establish ownership of the trailer. *Id*. at 89a. We are bound by the trial court's findings. *Laurel Rd. Homeowners Ass'n*, 191 A.3d at 952.

## IV. Conclusion

In light of the foregoing, the trial court did not improperly shift the burden of proof of ownership to Moore and did not err in concluding that the evidence did not establish Moore's ownership of the trailer. Accordingly, the trial court's May 6, 2024, order is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: 2005 H&H Car Trailer      :
Vin 4J6UF18255B076580      :
      :   No. 740 C.D. 2024
Appeal of: Christopher Moore   :

# **O R D E R**

AND NOW, this 1st day of October, 2025, the May 6, 2024, order of the Court of Common Pleas of Adams County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge